## ALBERT JOURNEAY et al. *vs.* THOMAS C. BROWN et al.

1. On an application to appoint a receiver under the "Act to prevent fraudulent trusts and assignments," approved March 7th, 1850, if the judge, upon the case made before him, has authority to make the order, it will not be reversed on *certiorari*, unless it appear that in making it he committed manifest error, and that the order is illegal.

2. The allegations, required by the second section of the act to be set out in the petition, must be established by proof; but if there is any evidence which goes to prove them, and on that evidence the judge decides that a case for the appointment of a receiver is made out, the decision will not be reversed on *certiorari*. If it appear that the judge has jurisdiction and power to make the order, it is sufficient; on a review of the case by *certiorari*, this court will not weigh the evidence.

3. The order appointing a receiver must show that the judge decided the case upon what he considered sufficient evidence to establish the allegations in the petition.

4. The debtor has no right to make any disposition of his property after proceedings for the appointment of a receiver have been commenced; but if an assignment is made by him, the order appointing a receiver does not conclude the assignee from trying the validity of the assignment.

5. The rights of the assignee under the assignment cannot be decided by a judge on an application to appoint a receiver, or by this court on a *certiorari* brought by the debtor to set aside the order appointing a receiver; the proper way to determine that question would be by a suit brought by the receiver to recover the property; the order only judicially determines that a case is made under the statute for the appointment of a receiver, and that one is appointed accordingly.

6. Although a debtor, on an examination, swear that he has no property, yet if facts and circumstances are disclosed by him, or by the evidence of others, sufficient to raise a very strong presumption to the contrary, a receiver may be appointed for the purpose of taking such steps in the premises as subsequent investigation may warrant.

The *certiorari* in this case brings up for review a certain order and proceedings, made and had before one of the justices of the Supreme Court, on a suit in the Hudson Circuit, wherein Albert Journeay, Jr., Benjamin Lynes, and William W. Young were plaintiffs, and Thomas C. Brown and Henry Demarest were defendants. The following facts appear upon an inspection of the return:

1. On the 18th October, 1854, Brown and Demarest made an assignment for the benefit of their creditors. Their assets were stated at $12,400; debts, $26,000. On the day following, Hillyard, Hays and Hopkins, partners, obtained a judgment against them. But one creditor applied under this assignment within the three months limited by the statute. His claim was but $150. The other creditors, for some reason, declined coming in with their claims.

2. On the 8th of December, 1854, Journeay, Lyons and Young obtained a judgment against them in the Hudson Circuit for $592.75 and costs; they immediately issued their execution, which was returned to December Term by the sheriff, no goods or lands of the defendants in his county.

3. On the 26th of March, 1855, the plaintiffs presented a petition under oath to a justice of the Supreme Court, setting out the facts of the recovery of the judgment aforesaid, the issuing and return of the execution, &c., and alleging their belief that the said Brown and Demarest had property and money and things in action due to them and held in trust for them, &c., and praying that they, by an order, be required to appear and make discovery on oath, &c., before said justice or a commissioner, &c.

4. On the 28th of March, 1855, the justice made the order for the examination of the defendants, according to the prayer of the petitioners, before a commissioner named by him. The defendants thereupon appeared before the commissioner, and the examination was proceeded with from the 3d of April to the 20th September, 1855, by various adjournments.

5. On the 16th May, 1855, pending these examinations, the defendants made a new assignment of their property, for the benefit of their creditors, to John J. Brown, the same party to whom they had made their first assignment.

6. On the 18th September, 1855, the plaintiffs filed a supplementary petition, setting out the previous proceed-

ings and the fact of the October assignment, and alleging, among other things, "that these petitioners caused the said defendants to be examined to make discovery of their assets; that before or after such examination, and on the day it closed, the said defendants, without declaring on such examination their intention to do so, and without revealing the fact that but one creditor had applied under said assignment, and that said assignee held, as he did, a very large amount of property, and among the rest over $700 in cash, in trust for said defendants, as but one creditor had applied and been paid, made a new assignment for the benefit of creditors to said John J. Brown, who now holds the said sum of over $700 in cash and notes, and securities and other property and assets, of said defendants." And they further say they are advised that the said cash, &c., in the hands of Brown are subject to the lien of the petitioners' judgment and execution, and that they are entitled to have the same; for that the defendants could not, under the act entitled, "An act to prevent fraudulent trusts and assignments," approved March 7th, 1850, and particularly under the fourth section of said act, make any disposition of said property pending their examination or pending any proceedings by the petitioners, and that the said last assignment to Brown is void as against them, and they pray an injunction, &c.

7. On the 24th September, 1855, the justice made an order upon said petition, enjoining said John J. Brown from paying or transferring any money or property of said Brown and Demarest in his hands to said debtors or to any third person until further order.

8. On the 24th November, 1855, the justice made a further order, stating, among other things, that he had considered the evidence in the examinations contained, and was satisfied and did adjudge that said Brown and Demarest had, at the time of the issuing of the execution on the plaintiffs' judgment, have since had, and now have,

property, &c., and that said John J. Brown now holds property in possession and action in trust for the defendants, &c., and thereupon appoints a receiver, &c., and orders the said Brown and Demarest to convey and deliver to said receiver all such property and things in action, and the evidence thereof, according to the form of the statute, &c.

*Zabriskie* now moves to set aside this order, in behalf of the plaintiffs in *certiorari; Gilchrist, contra.*

The case was argued before Justices ELMER, POTTS and VREDENBURGH.

The opinion of the court was delivered by

POTTS, J. The reasons assigned by the plaintiffs in *certiorari* for the reversal of the order appointing a receiver, and adjudging that said plaintiffs in *certiorari*, and that John J. Brown for them, had, since the issuing of the execution, things in action, money and property, held in trust for them, are—

1. That the said plaintiffs in *certiorari*, or the said John J. Brown for them, did not, at the time of issuing the execution on which said proceedings are founded, have any property, money, or things in action, due to them or held in trust for them, over and above the property reserved by law, nor was any discovery made by such proceedings.

2. That such order, so made by the said justice, was not warranted by the evidence and examinations certified to said justice.

3. That said order was contrary to law.

This was a proceeding under the act to prevent fraudulent trusts and assignments. *Nixon's Dig.* 251, *pl.* 23, &c. The petitioners, who were judgment creditors of Brown and Demarest, submitted to the justice, by a petition duly verified, the facts necessary to entitle them to an order upon the debtors to appear and make discovery. They showed a judgment, execution, and return unsatisfied;

and alleged their belief that the judgment debtors had property or money, or things in action, due to them, or held in trust for them, where the trust had been created by, or the fund held in trust had proceeded from themselves, &c. Indeed, it is not disputed that the order for an examination was properly made.

The supplementary petition, verified by the oath of one of the judgment creditors and petitioners, disclosed facts and circumstances showing that John J. Brown held a large amount of money and assets in trust for the use of the debtors, Brown and Demarest, under one or the other of two several assignments, one made prior to the petitioners' judgment, the other subsequent thereto. Here was undoubtedly a *prima facie* case, at least, which warranted the order forbidding the trustee from paying over or transferring the property in question pending the proceedings. Thus far no exception is taken to the action of the justice in the premises.

The examination of the debtors was closed on the 20th September, 1855, and certified to the justice. He held the matter under advisement until the 24th of November following; and then, having considered the evidence and being satisfied, he says he *adjudged* that said Brown and Demarest had, at the time of the issuing of the execution on the plaintiffs' judgment, have since had, and now have, property, &c., and also property and money and things in action held in trust, &c., and also, that John J. Brown, since the issuing of said execution, held and now holds, money and property in possession and action in trust for the said defendants, &c., and *ordered* that David Bedford be a receiver, &c., and that Brown and Demarest do convey and deliver to said receiver all such property and things in action, and the evidence thereof, &c. This order is complained of, and sought to be set aside and reversed, for the reasons assigned.

If, upon the case made before him, the justice had authority to make the order; if in making it, he committed

no manifest error, we cannot reverse it on *certiorari*. To get clear of the order in this mode, it must appear that the judge erred in making it—that it is an illegal order.

The act under which these proceedings were had confers a species of equitable jurisdiction on the justices of the courts of common law, for the particular purpose of facilitating a judgment creditor in enforcing his judgment. It provides, in the first place, for an *ex parte* proceeding, by which a debtor, supposed to have property concealed in his own possession, or in the possession of some person or persons in trust for his use, may be compelled to make discovery under oath in relation to it; and, in the second place, for an *ex parte* order to restrain the disposition of property or funds in the hands of third parties belonging, or supposed to belong, to the debtor. The preliminary steps being taken by the judgment creditor and the preliminary proofs made in accordance with the statute, the orders for examination and to restrain, follow very much as matters of course.

The examinations of the judgment debtors being completed, and, if taken before a commissioner, certified to the judge, the statute provides, that "thereupon, after considering the evidence of said party and witnesses taken before said commissioner, &c., it shall be lawful for said judge to make order appointing a receiver," &c. It shall be lawful, that is, he shall have authority, to be exercised of course according to a sound legal discretion, to make the order. There must doubtless be *some* evidence before him to sustain the allegations of the petition; to show that the debtor "hath property, or money, or things in action, due to him, or held in trust for him, where the trust has been created by, or the fund held in trust has proceeded from himself, over and above such property as is or may be reserved by law, to an amount exceeding $50," or there must be *some* proof of "facts and circumstances showing that some person owes the said debtor, otherwise than for his labor or personal services, or the

labor or personal services of any member or members of his family, or holds money or property in possession or action in trust for him or for his use;" but if there is any evidence which goes to establish these allegations of the petition, or any of them, and the judge considers and decides that a case for a receiver is made out, the court will not, on *certiorari*, reverse that decision. They will not weigh the evidence. If there is that which gives him jurisdiction, power to make the order, it is enough.

Now the order in this case which is complained of sets out in substance, as we have already stated, that proof sufficient had appeared before the judge to satisfy him that there was property, &c., in the hands of the defendants in execution, and held in trust for them by Brown. This is denied by the defendants in execution, who are the plaintiffs in *certiorari*, and upon this denial they put their motion to reverse the order. The reasons for reversal filed, and the whole argument in support of them, is, that there was no such proof; that the judge made the order without such proof; and that, therefore, the order is illegal. And we must look into the evidence to see if these reasons are founded in fact.

The examinations of the defendants disclose the following, among other facts and circumstances, to wit, that the defendants in execution were partners in the mercantile business in Jersey City, and had been so for some few years; that in September, 1853, their assets exceeded their liabilities about $8000; that, without having sustained losses of any considerable amount by bad debts, about the corresponding period of the next year, 1854, their assets amounted to $12,400, and their liabilities to $26,000, being a clear loss in one year of about $22,000; that they stopped payment on the 13th September, 1854, and made an assignment to John J. Brown, the brother of one of the defendants, for the benefit of creditors, on the 18th of October following; that between the time when they stopped payment, and the time when they made the assign-

ment, they went on selling goods and collecting debts, and received and paid out to confidential creditors over $10,000 ; that but a single creditor, for $150, came in with his claim under the assignment of the 18th October ; so that, on the 8th of December, when the plaintiffs obtained their judgment, the assignee had assets of the firm to the amount of over $12,000, against which only one claim of $150 was presented ; and on the 26th March, 1855, when the proceedings for a discovery, &c., were commenced, a balance of over $12,000 remained in the assignee's hands over and above the claim presented, and the time limited by the statute for presenting claims had then expired. But more than this, the examinations disclosed another fact, to wit, that on the 16th of May, 1855, at which time the examinations of the defendants were in progress, they executed a new assignment of the same identical property remaining undisposed of to the same assignee, and which assignment was accepted by him.

The judge, in making his order for a receiver, manifestly assumed that the assignment of the 18th October was either void for fraud or illegality, or had been executed by a virtual re-delivery of the balance of the assets to the defendants ; and there is nothing before this court by which it appears that he drew an erroneous conclusion from the facts in this particular. The assignment had manifestly been repudiated by those for whose benefit it was said to have been made ; with a solitary exception, the creditors refused to avail themselves of it. It had been treated as an executed trust by the assignors and assignee ; for the assignors re-assumed the possession and control of the balance of the assets for the purpose at least of a new assignment, and the assignee accepted of the new assignment, and, according to Thomas C. Brown's testimony, holds the assets in his hands under the last assignment.

As to the assignment of the 16th May, its validity, to say the least, is extremely doubtful. The " act to prevent fraudulent trusts and assignments," seems clearly to contemplate

that the proceedings under it shall operate to prevent the debtor from making a disposition of his property while they are pending. The authority conferred on the receiver, when appointed, is to possess, receive, and, if need be, sue for and recover, the property and things in action belonging or due to or held in trust for such debtor *at the time of the issuing of the execution, or at any time afterwards.* It would utterly defeat the beneficial operation of the act if the debtor, the moment the petitioning creditor has extorted from him a discovery of property in his possession or under his control, could dispose of it or by any mode put it out of the reach of the creditor. The judge treated this second assignment as inoperative for the purposes for which it was made, and we cannot, upon *certiorari,* say that he was in error in so holding.

The order appointing a receiver does not conclude this assignee, however, from being heard upon the question of the validity of the assignments either of October or May. He stands in the situation of a garnishee. The property can only be recovered of him by a suit brought by the receiver, and in that suit he may be heard fully in his defence. The order does not direct him to pay or deliver the money and property to the receiver. It only authorizes the receiver to sue for it if it is not forthcoming on demand. Neither the judge who made the order, nor this court, now is in a situation judicially to determine the question whether or not the assignee holds the property by a valid title as against the claim of the petitioning creditors. The assignee was not a party to the proceeding below. He is not here. The assignments were not before the judge, nor are they here. The order complained of does, indeed, use the phraseology, I "am satisfied and do adjudge," &c., "that John J. Brown, since the issuing of said execution, held and now holds money and property in possession and action in trust for the said defendants," &c.; but this is only by way of inducement. All that the order judicially determines is, that there is a case made

under the statute for a receiver, and that one is appointed accordingly.

It is argued, for the plaintiff in *certiorari*, that no money or property was discovered by the examinations of the defendants. They disclosed the fact that assets of the firm, to the amount of over $12,000, was in the hands of John J. Brown, and stated how it was there. But, besides that, I am not able to see that the defendants gave a satisfactory account of what had become of the rest of the large amount of property and money which had, upon their own showing, come into their hands in the course of the year preceding the first assignment. The judge who made the order was of opinion that they had property for which they ought to account to the receiver. His opinion may very well be supposed to have been founded on the fact that the examinations traced more property and means to their possession than they showed they had disposed of; and I do not think this court can say, upon reviewing the testimony before the judge, that in this he committed manifest error. Though the debtors swear they have no property, yet, if the facts and circumstances disclosed by them raise a very strong presumption to the contrary, a receiver may be appointed, in order that he may take such steps in the premises as further information and investigation may warrant. This was the course pursued in equity in New York upon a creditor's bill. *Chipman* v. *Sabbaton*, 7 *Paige* 47.

The plaintiffs in *certiorari* have not, in my opinion, made manifest any error in the order appointing a receiver, and the order ought to be affirmed.