60 N.J. Super. 182 (1960)
158 A.2d 432
CHARLES SHRIBMAN, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF SIMON SHRIBMAN, PLAINTIFF,
v.
HELEN D. MILLER, AS EXECUTRIX OF THE ESTATE OF ALTON GLENN MILLER, DECEASED, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 26, 1960.
*185 Mr. Bernard Hellring, attorney for plaintiff.
Messrs. Lum, Fairlie & Foster, attorneys for defendant.
*186 KILKENNY, J.S.C.
This court is called upon to determine in limine this question:
Must this court stay plaintiff's action pending submission of the matters in dispute between the parties to the International Executive Board of the American Federation of Musicians and the determination thereof by said board?
This court answers that question in the affirmative for the following factual and legal reasons.
In June 1959 plaintiff sued the widow and executrix of the estate of Alton Glenn Miller in this court for an accounting by her of moneys allegedly due plaintiff under a 1939 written contract between plaintiff and his brother Simon, now deceased, on the one hand, and the decedent Alton Glenn Miller, on the other. This 1939 contract was for a term of ten years. Plaintiff's brother Simon died after the making of the contract, and plaintiff succeeded to his rights thereunder. Miller, a popular orchestra leader, who performed professionally under the name of "Glenn Miller and his Orchestra," died in 1944.
Miller's will was probated before the Surrogate of Bergen County, in which county he was domiciled at his death. Miller's widow at the time of suit was and is now a resident of California. Jurisdiction by this court over Miller's estate and executrix was effected by service of a copy of the summons and complaint on the Bergen County Surrogate. The executrix answered the complaint and did not question this court's jurisdiction over her in her representative capacity. She did question jurisdiction over her individually by her answer and, subsequently, on her motion, this court ordered service upon her in her individual capacity set aside. No appeal was taken from that order. Hence, the suit remained only against Miller's estate.
Even though Miller has been dead about 16 years and the contract of 1939 would have expired under its ten-year term in 1949, if Miller had lived on, and even though neither Miller nor his estate paid any money to plaintiff or his brother Simon on account of this contract from 1943 to date, *187 plaintiff contends, nevertheless, in this suit that Miller's estate owes plaintiff an accounting of moneys received by Miller's estate after his death, but based on Miller's activities between 1939, when the contract was made, and 1944, when Miller died. Thus, for example, plaintiff alleges a right to an accounting of any moneys which may have been paid by third persons to Miller's estate on account of recordings made by Miller and his orchestra between 1939 and 1944, even though the recordings might have been dormant and not revived or processed for sale and distribution until long after Miller's death. Likewise, he seeks an accounting of any moneys which may have been realized by Miller's estate, as the result of the filming of the "Glenn Miller Story," a movie of Miller's life, made long after his death, but which in its scenes and music may have embraced in part, at least, Miller's orchestral activities between the 1939 contract date and the date of his death in 1944.
The defendant estate's answer admitted the 1939 contract, but denied any and all liability thereunder. It raised, additionally, as affirmative defenses that Miller was released and discharged from the 1939 contract by a later 1943 agreement between the parties; that nothing became due to plaintiff after and by reason of Miller's death in 1944; that plaintiff's claim was barred by the New York six-year statute of limitations, as well as by laches; and, more particularly for this decision, that the 1939 contract required the submission of any disputes or controversies thereunder to the International Executive Board of the American Federation of Musicians, by way of arbitration. Hence, defendant contended that plaintiff had no right to proceed with his litigation in this court until after submission to and determination by the Executive Board of the American Federation of Musicians of the matters in dispute.
The case was pretried and trial was set for January 27, 1960. Defendant's motion to stay this action pending submission to arbitration as aforesaid was denied by this court on December 5, 1959, because the limited affidavits and *188 written proofs then submitted to the court left doubt in the court's mind as to the applicability of the arbitration provision.
On the premise that "to doubt is to deny" injunctive relief, the stay of the action pending arbitration was then denied.
The 1939 contract did not contain an express provision for the arbitration of disputes, in so many words, but did provide, inter alia, as follows:
"5. The parties hereto will comply with and be bound by the laws, rules, regulations and orders of the American Federation of Musicians, and of any Local thereof having jurisdiction, anything herein contained to the contrary, notwithstanding, and said Miller and the members of his orchestra are at all times to be members in good standing in said Federation."
The by-laws, rules, regulations and orders of the American Federation of Musicians required persons licensed by the American Federation of Musicians to act "as agent, manager, or representative" for members of the Federation to sign a form of "License Agreement."
Plaintiff and his brother Simon were admittedly licensees of the American Federation of Musicians, and Miller was admittedly a member thereof in 1939, when they made their contract.
The license agreement form contained, inter alia, these pertinent provisions:
"14th: The provisions hereof shall be deemed included in, and part of, any and all agreements between the licensee and Federation members; and acceptance of this license shall constitute a modification of all existing agreements between the licensee and such members to accord with the terms hereof.

* * * * * * * *
16th: Any default, dispute, controversy or difference arising between the licensee and the Federation, any local or any member or members of the Federation, shall be submitted to, and determined by the International Executive Board of the Federation, and the determination of said Board concerning the matters enumerated above shall be conclusive, final and binding on all connected therewith.
*189 17th: In the event of any violation of the terms hereof by the licensee, and the Federation shall have determined that such violation occurred, each and every member of the Federation shall thereby and thereupon be deemed released and discharged of and from any and all engagements and contracts with the licensee, and of and from any and all claims, of every kind and nature, by the licensee, against any member of the Federation."
Plaintiff's attorney argued, however, that while plaintiff and his brother had been admittedly Miller's managers, booking agents, and representatives under an earlier 1938 agreement, which provided a 25% commission on Miller's net earnings, after certain specified deductions, this 1938 agreement had been mutually rescinded and the 1939 contract had been entered into, providing for a lower commission of 16-2/3%, and with lesser duties to be performed by plaintiff and his brother. Thus, plaintiff contended that the terms of the license agreement were not applicable to their relationship under the 1939 contract.
Thereafter, defendant's attorney moved to reargue the denial of the stay pending arbitration and submitted additional proofs, allegedly discovered after the denial on December 5, 1959 of defendant's motion. When the motion for reargument was presented on January 15, 1960, the court reserved decision, because the trial was scheduled for January 27, and it was agreed between the court and counsel for both parties that the trial on January 27 would be limited on that day solely to the issue of whether the contract between the parties required arbitration of disputes thereunder, so as to warrant a stay of the action in this court until after arbitration.
As the result of a full day of trial of that initial issue only, at which both sides submitted their witnesses and proofs, this court has concluded that the services to be performed by plaintiff and his brother under the 1939 contract were some of the duties required of an "agent, manager, or representative," and hence subject to the terms included in the form of license agreement provided for by the rules and regulations of the American Federation of Musicians. The *190 court finds that the parties themselves regarded plaintiff and his brother as "managers" of Miller under the 1939 contract to some extent and acknowledged their contract to be a "management agreement." Thus, in the annual statements of account between the parties for the years 1940 and 1941, the amounts payable by Miller to plaintiff and his brother were designated "management fees." Also, in an agreement between the parties made in 1943 resolving the matter of fees payable by Miller to plaintiff and his brother for the year 1943, inter alia, the parties referred several times therein to their 1939 contract as a "management agreement." While it is true that the substance of an agreement, or any object, will not be changed by a misnomer or incorrect designation thereof, when, as here, there is a dispute as to whether a contract was, in fact, a management arrangement between the parties, their own mutual designation thereof as a "management agreement" is entitled to great weight and deserving of serious consideration by the court, especially since they were experts in the field to which the question relates. Furthermore, a comparison of the 1938 contract, in which plaintiff and his brother were obviously and admittedly managers and agents of Miller, and the 1939 contract will show, by similarity of the language used, that in both agreements it was provided:
"The Shribmans, or their survivor, undertake and agree to counsel, assist and advise Miller to the best of their ability, whenever he requests counsel, assistance or advice in all matters pertinent, material or relating to his professional career and to the successful operation and exploitation of his orchestra, as the same is now or may hereafter be constituted."
The essential difference in the services to be performed under the two contracts, which explains the drop from 25% commission to 16-2/3% commission, consisted in the obligation of plaintiff and his brother under the 1938 agreement to obtain certain minimum bookings for Miller and his orchestra. The 1939 contract omitted this requirement.
*191 Having concluded that the 1939 contract was subject to paragraph 16 of the license agreement of the American Federation of Musicians, supra, the next inquiry is whether a stay was mandatory upon this court pending the submission of the dispute to arbitration. Further, if the court refused the stay, would plaintiff's proceeding with the suit in this court, without first submitting the controversy as required by paragraph 16, supra, destroy his cause of action under paragraph 17 of the license agreement, supra.
While the Arbitration Act adopted in New Jersey in 1923, now N.J.S. 2A:24-1 et seq., plainly provides:
"A provision in a written contract to settle by arbitration a controversy that may arise therefrom or a refusal to perform the whole or a part thereof or a written agreement to submit, pursuant to section 2A:24-2 of this title, any existing controversy to arbitration, whether the controversy arise out of contract or otherwise, shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract."
and N.J.S. 2A:24-4 clearly states:
"In an action brought in any court upon an issue arising out of an agreement providing for the arbitration thereof, the court, upon being satisfied that the issue involved is referable to arbitration, shall stay the action, if the applicant for the stay is not in default in proceeding with the arbitration, until an arbitration has been had in accordance with the terms of the agreement."
certain language in prior court decisions interpreting the effect of arbitration clauses in contracts invited some question as to whether a stay of court proceedings is mandatory, when the arbitration provision does not make arbitration a condition precedent to a suit in the courts.
It is clear that at common law arbitration was looked upon by the courts with disfavor, as tending to oust the courts of their legitimate jurisdiction and function in settling legal disputes. In Vynior's case, 8 Coke Rep. 81 (K.B. 1609), the agreement to arbitrate was held to be revocable on either side and thus unenforceable. The same view was *192 stated as late as 1914 in New Jersey in Anderson v. Odd Fellows' Hall, 86 N.J.L. 271, 272 (E. & A. 1914):
"The condition to arbitrate, as expressed in this contract, is not, by its terms, made a condition precedent to an action to recover for extra work. It is nothing more than an agreement to arbitrate disputes regarding the amount to be determined for extra work ordered and performed in cases where the parties cannot agree, revocable at any time before it is fully executed and an award made, and the bringing of a suit amounts to a revocation." (Italics supplied)
Thus, the Anderson case supported the common-law view that arbitration provisions providing for enforcement of executory agreements to arbitrate were not enforceable, unless they created a condition precedent.
Thus, prior to the 1923 New Jersey arbitration statute, a distinction was drawn between an arbitration clause in a contract, which made recourse to arbitration and the obtaining of an arbitration award a "condition precedent" to resort to the courts, and one which was not expressly and clearly made a condition precedent. In the latter instance, before the 1923 statute, the parties could resort to the courts for relief, without the necessity of arbitration, if they chose to do so, notwithstanding a provision in the contract in which they agreed to submit future disputes in connection therewith to arbitration.
Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2 Cir. 1942), explains the difference between the old and the modern view concerning enforcement of arbitration provisions. Public policy against ousting courts of jurisdiction and the revocability of authority vested in arbitrators were the technical reasons usually ascribed in the past for the nonenforceability of executory arbitration agreements covering future disputes. Lord Campbell explained the English attitude as due to the desire of judges, at a time when their salaries came largely from fees, to avoid loss of income.
In 1855, in Scott v. Avery, 5 H.L.C. 811, it was held that if a policy made an award of damages by arbitrators a *193 condition precedent to a suit on the policy, a failure to submit to arbitration would preclude such a suit.
The effect of the New Jersey 1923 Arbitration Act is explained in a 1935 article, Landon, "Commercial Arbitration in New Jersey," 1 N.J. Law Rev. 65, 78-81, in these words:
"Thus, in the first section of the 1923 statute agreements to arbitrate future disputes have been made valid, binding, and irrevocable, and the necessity of resorting to the fiction of conditions precedent is no longer present. * * * As a necessary companion to the making of agreements to arbitrate future disputes valid and irrevocable, the 1923 statute, in § 5, has placed arbitration on a par with court proceedings by virtue of the fact that no suit or action can now be brought upon an issue arising out of an agreement which includes a provision that disputes thereunder shall be arbitrated."
The settlement of suits by arbitration is now favored in the law. Where parties have covenanted in their executory contract to submit future disputes to arbitration, the covenant either is, or is not, a condition precedent to a resort by the parties to the courts for relief under the contract. In fact, the covenant may be so broadly worded as to constitute a condition precedent to a resort to the courts even for preliminary relief, such as a preliminary injunction, attachment, or a custodial receiver. However, unless so broadly worded as to bar resort to the courts for preliminary relief, the parties may seek such emergent relief from the courts, notwithstanding their agreement to submit all future disputes to arbitration. Sonotone Corp. v. Hayes, 4 N.J. Super. 326 (App. Div. 1949).
Where the provision for the arbitration of future disputes, arising under an executory contract, is so clearly and unequivocally worded as to require, expressly or by necessary implication, that the parties may not resort to the courts for the resolution of those disputes, unless and until the submission of the disputes to arbitration and the determination thereof by the arbitration, such a condition precedent agreed upon by the parties in their contract will be and *194 must be enforced. It is nothing more or less than requiring the parties to live up to their contract, to perform the conditions precedent which they have covenanted to observe. We then refer to the arbitration provision as a condition precedent to a resort to the courts. For failure to comply therewith, the party seeking enforcement of the arbitration provision may move for a dismissal of a court action brought in violation of such a condition precedent. This has been the accepted rule, at common law and under our modern practice. Wolff v. Liverpool & London Ins. Co., 50 N.J.L. 453 (Sup. Ct. 1888).
On the other hand, where the covenant to arbitrate future disputes arising under an executory contract merely provides that any and all such disputes shall be submitted to arbitration and determined thereby, but does not say in effect and in substance that "no suit shall be brought in the courts until after arbitration," or "no suit shall be brought in the courts, except to enforce an award made by the arbitrators," then it is held that the covenant is not a condition precedent to "a resort to the courts." Thus in Coastal Oil Co. v. Eastern Tankers Seaway Corp., 29 N.J. Super. 565 (App. Div. 1954), the Chancery Division had granted a summary judgment dismissing the case upon an arbitration clause not expressly made a condition precedent. The Appellate Division reversed the order for summary judgment, stating at page 576:
"It may be noted that arbitration was not made a condition precedent by the terms of the contract and that in the absence of a covenant making arbitration a condition precedent, an agreement to arbitrate does not operate to deprive either party of its right to resort to the courts for relief."
A quick reading of this language might suggest that where the arbitration provision is not made expressly a condition precedent, the parties may ignore their contract to arbitrate, by-pass their mutual covenant to submit the dispute to arbitration, and resort to the courts for relief, as though the provision for arbitration were absent from their contract. *195 Such a conclusion may very well have been drawn at common law and before the arbitration statute adopted in New Jersey in 1923 (now N.J.S. 2A:24-1 et seq.). See Anderson v. Odd Fellows' Hall, supra.
But since our arbitration statute of 1923, it seems clear that there is a mandate upon the courts to grant a stay, as distinguished from a dismissal, of the court action, when the arbitration clause is not a condition precedent to resort to the courts. It might be asked then, "Why should the parties be permitted to resort to the courts at all, if there will be a stay of court action pending arbitration?" Several reasons appear therefor. The court action may be necessary to obtain a preliminary injunction, or a custodial receiver, or for discovery purposes, which forms of relief may not be available in arbitration. Or the defendant in the court action may elect to waive his right to arbitration and thus both parties may submit their dispute to the court without regard to the arbitration provision. Also, by having the suit pending in court, though stayed, the successful party may ask the court for judgment based upon the arbitrators' award without the need to institute a new suit after arbitration to convert the award into a judgment of the court.
The confusion generated by the language of the cases, where arbitration had not been made a condition precedent to a resort to the courts, stems from a failure to recognize that in those cases the court was considering the propriety of a dismissal of the court action for failure to arbitrate, rather than a stay of the action.
It seems clear that what the court meant in the Coastal Oil Co. case, supra, and in Rosenthal v. Berman, 14 N.J. Super. 348 (App. Div. 1951), was that it is wrong to dismiss the court action, when the arbitration provision is not a condition precedent to a resort to the courts. But none of those cases held that it was wrong to stay the action pending arbitration, which is not a condition precedent.
In Hudson Wholesale Grocery Co. v. Allied Trades Council, 3 N.J. Super. 327 (Ch. Div. 1949), the defendant moved *196 to dismiss on the basis of an arbitration clause, which was not a condition precedent, and, in the alternative, moved for a stay pending arbitration. The motion to dismiss was denied and the stay was granted.
The right to a "resort to the courts" does not mean that the arbitration clause is rendered nugatory, simply because it was not made a condition precedent. Rather, it means that in such instances suit may be filed in the courts and preliminary relief may be sought, but the defendant may nevertheless seek a stay of the court action, pending arbitration of the merits of the dispute. Thereafter, the award may be converted into a judgment in the pending court action, at the instance of the party successful at the arbitration hearing, assuming no fraud and the existence of a proper basis for the award.
To hold otherwise would render meaningless N.J.S. 2A:24-1, which gives statutory enforceability and irrevocability to agreements to arbitrate. Likewise, there would be no reason to provide in N.J.S. 2A:24-4 for a stay of court proceedings pending arbitration. If the arbitration covenant is a condition precedent to resort to the courts, then a resort to the courts in violation thereof would warrant a dismissal of the action. That was the rule before the 1923 statute, and is obviously still the rule. The statute providing for a stay must apply to arbitration covenants which have not been made conditions precedent to a resort to the courts. For it is only in those instances that a party could have properly resorted to the courts before the statute for a hearing on the merits, notwithstanding the existence of an arbitration covenant. Hence, it is only in those cases that there would be any need under the present statute to ask for a stay. And the statute provides expressly that the court "shall stay" the court action.
In fact, the only instances in which a stay has been denied since the statute were those in which the arbitration procedure was ineffective for practical reasons, as, for example, when the action involved some parties not bound by the *197 arbitration provision. Stiles v. Hammond, 21 N.J. Super. 237 (App. Div. 1952); Rosenthal v. Berman, supra.
The following authorities and decisions from other jurisdictions, with arbitration statutes similar to that in New Jersey, support the view that covenants in executory contracts for the arbitration of future disputes will be specifically enforced, and actions brought in the courts will be stayed pending arbitration, when the agreement to arbitrate is not made a condition precedent to a resort to the courts. 6 Williston on Contracts (rev. ed. 1938), sec. 1920; Murray Oil Products Co. v. Mitsui & Co., 146 F.2d 381 (2 Cir. 1944); The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117 (1944); Tas-T-Nut Co. v. Continental Nut Co., 125 Cal. App.2d 351, 270 P.2d 43 (Ct. App. 1954); River Brand Rice Mills, Inc. v. Latrobe Brewing Co., 305 N.Y. 36, 110 N.E.2d 545 (Ct. App. 1953); American Reserve Ins. Co. v. China Ins. Co., 297 N.Y. 322, 79 N.E.2d 425 (Ct. App. 1948); DeLillo Construction Co. v. Lizza & Sons, Inc., 7 N.Y.2d 102, 195 N.Y.S.2d 825, 164 N.E.2d 95 (Ct. App. 1959).
The defendant has made no demand for a dismissal of this suit, but has sought only a stay. Hence, it is not essential to this present determination to decide whether paragraph 17, supra, of the licensing form agreement of the American Federation of Musicians, in conjunction with paragraph 16, supra, makes submission of the controversy to the Executive Board a condition precedent to liability, or to a resort to the courts, thus warranting a dismissal of this suit. Paragraph 17 is perfectly plain, however, that if the rules, including the requirement of submission under paragraph 16, are not complied with, then all liability under the contract is at an end.
It was for that reason that this court suggested to plaintiff's attorney at the hearing that if a stay were denied by this court and plaintiff proceeded in violation of paragraph 17, he might very well destroy any cause of action *198 which plaintiff might have had under the contract. Thus, a denial of the stay might have resulted in a Pyrrhic victory for the plaintiff. Despite plaintiff's willingness to assume the risk of destroying his possible cause of action, the conscience of the court, the interests of justice, the contract of the parties, and the statute require that this action be stayed pending submission of the matters in dispute to the Executive Board of the American Federation of Musicians.
If the agreed-upon submission under paragraph 16 is not a condition precedent to a resort to the courts, it is at least sufficient to justify a stay under the statute and modern decisional law. If the agreement to submit under paragraph 16, in conjunction with the destruction of the right to sue on the contract under paragraph 17 for failure to submit, renders it a condition precedent to liability and a resort to the courts, plaintiff can hardly complain if this court grants defendant her requested stay, rather than the dismissal which defendant might have sought, under such circumstances, ever since the common law.
An order allowing the stay will be entered.