190 N.J. Super. 510 (1983)
464 A.2d 1146
FIRST NATIONAL STATE BANK OF NEW JERSEY, A NATIONAL BANK, ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA, PLAINTIFF-APPELLANT,
v.
HAROLD KRON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted June 13, 1983.
Decided July 18, 1983.
*511 Before Judges ARD, KING and McELROY.
Gross & Novak, attorneys for appellant (William P. Isele, on the brief).
Harold Kron filed a brief pro se.
The opinion of the court was delivered by KING, J.A.D.
This is an appeal from an order denying appointment of a statutory receiver in aid of execution under N.J.S.A. 2A:17-66. Plaintiff holds a 1978 unsatisfied judgment in the amount of $23,648 plus interest against defendant Kron based on a default on a $20,000 promissory note executed in 1977.
Plaintiff bank has made numerous and varied efforts to collect the judgment including three depositions to discover assets, writs of execution, attempted arrests, alias and pluries writs, contempt proceedings, and orders to compel production of tax returns and business records. Although pressed with diligence by plaintiff bank all have proved unsuccessful. From this record it is obvious that Kron is adept at avoiding service of process. When finally available for questioning he has proved most obdurate and evasive.
Kron purports to be a public accountant but the Board of Certified Public Accountants reports that he is not registered in this State. He denies owning any assets except clothes, a watch, two pairs of cuff links and a clock. His office is in his home on Harvard Place in Fort Lee. He conveyed title to the *512 house to his wife of 29 years in 1971. He says that she alone owns all furnishings in the home. His wife pays all the bills: "I give her a certain amount of money and she takes care of all the items." He either leases a car or drives a son's car. One of his sons has two master's degrees and attended Cordon Bleu in Paris. The other son is a Columbia Law School graduate and a member of the New York Bar. Kron said that he supported their education and living expenses through 1981 with "the fruits of my labors." In 1980 Kron admitted cashing a $15,000 check on a Canadian bank, in payment for consulting services, before taking a European vacation. Kron keeps no business records. He does not bill clients for his consulting services; apparently, they just pay him. He refused to disclose his clients' names, claiming a non-existent accountant-client privilege. He denied owning any accounts receivable.
Despite court orders, Kron refused to produce his tax returns because of an alleged dispute with I.R.S. He admitted earning over $50,000 in 1979 and earning $100,000 from one client in 1980. When asked under oath in September 1981 if he presently had any of this money, he said: "Well, I doubt that very much. It's very expensive to live today, you know." He admitted receiving $1,500 from a client three days before his 1981 deposition. As to this money, he said: "Its gone. [I] took care of certain debts with it." Some of this money went to his son "who was short at the moment in Paris."
The judge gave five reasons why he would not appoint a receiver in aid of execution under N.J.S.A. 2A:17-66: (1) appointment of a receiver was inappropriate in the case of an individual, (2) the remedy of an order to pay and for contempt was available, (3) the statute was old, (4) the lack of reported cases meant the statute had been forgotten and was no longer viable, and (5) defendant denied having assets but only received "present income." We do not consider these valid reasons for denial of the relief sought.
The statute under which a receiver in aid of execution was sought states in pertinent part:

*513 In aid of execution, the superior court or county court, or, subject to section 2A:18-30 of this title, the county district court, out of which the execution issued may, on application of either the judgment creditor or the defendant and in its discretion, order the appointment of a receiver of the property and things in action belonging or due to or held in trust for the judgment debtor as aforesaid, at the time of the recovery of the judgment or at any time thereafter. [N.J.S.A. 2A:17-66.]
The statute's antecedents go back to the early 19th century at least. A receiver appointed under Section 17-66 is "vested with the title to the said rights and credits" of the debtor and has the authority to take into his possession any property or debts owed to the debtor. N.J.S.A. 2A:17-67. The receiver has the power to take judicial proceedings in his own name and to liquidate assets and apply the proceeds to the judgment. Ibid.
The appointment of any receiver is an extraordinary remedy, see Roach v. Margulies, 42 N.J. Super. 243, 245-246 (App.Div. 1956), and involves the delicate exercise of judicial discretion. Adams v. Adams, 125 N.J. Eq. 166, 168 (E. & A. 1939); Neff v. Progress Bldg. Mat'ls. Co., 139 N.J. Eq. 356, 357 (Chanc. 1947). It has been said that appointment of a receiver where corporate assets are involved may proceed only upon imposing and persuasive proof. Id. at 357. This requirement stems in part from the "paralytic" effect of a receiver on the corporate affairs. Id. at 359-360.
All property, including money, income or profits due the judgment debtor is subject to the statute. N.J.S.A. 2A:17-66. See N.J.S.A. 2A:17-65 and N.J.S.A. 2A:17-57, et seq. Appointment of a receiver is appropriate even where the debtor does not hold specific and readily identifiable property. In Seyfert v. Edison, 47 N.J.L. 428, 431 (Sup.Ct. 1885), discussing a similar provision the chancellor said "if [the debtor] appears and makes denial of the ownership of such property, the contrary may be made to appear by other witnesses, and by such testimony a receiver may be appointed." Further, in Journeay v. Brown, 26 N.J.L. 111, 120 (Sup.Ct. 1856), our former Supreme Court stated
... Though the debtors swear they have no property, yet, if the facts and circumstances disclosed by them raise a very strong presumption to the contrary, a receiver may be appointed, in order that he may take such steps in the *514 premises as further information and investigation may warrant. This was the course pursued in equity in New York upon a creditor's bill. Chipman v. Sabbaton, 7 Paige 47.
The purpose of the remedy, receivership in aid of execution, and the appropriate circumstances for its application were amply summarized as early as Fuller v. Taylor, 6 N.J. Eq. 301, 302-303 (Chanc. 1847)
This act was passed after the enactment of the law abolishing imprisonment for debt, and is founded on the just idea that all the property of a debtor should be honestly applied to the payment of his debts, and on the further idea that, in view of the frauds of debtors in concealing and withholding property from creditors, by putting it in such shape that it cannot be reached by execution at law, the execution creditor should have the aid of a Court of Chancery to discover property and apply it to the satisfaction of his execution.
The statute is founded in morals, and is of most salutary tendency, and the spirit and equity of it should be faithfully and rigidly carried out by the Court of Chancery. A proper exercise, by this court, of the power given to it by this statute, will tend to correct an alarming evil which, I am satisfied, was fast growing upon us, by removing the temptations to the practice of it. The dictates of morality, and even of religion, or, I should rather say, the profession of it, seemed insufficient to silence the many pleas under which an easy conscience rests satisfied in the concealment of property from creditors. A legislative provision, in the shape of power to compel the discovery of hidden property, under the sanction of an oath, was necessary to correct the evil.
The statute provides that the court shall have power to compel the discovery, and, there being no limitation of the power, the plain inference is that the statute gives all the power which a Court of Chancery can exercise according to the course of the court. And the evil to be remedied is of such a nature that this court will not hesitate to exercise its fullest power in applying the remedy.
These remarks are not made with special reference to the present case, but are intended to express the views of the court as to the power given by the statute, and the manner in which it may and should be exerted.
The question now presented is, whether an answer of a defendant, to a bill filed by an execution creditor under our statute, that he has no property of any kind, enables a defendant successfully to resist a motion for an order referring it to a master to appoint a receiver, and for the delivering over, by the defendant, to such receiver, of his property and effects, an oath before the master. I am clearly of opinion that it does not.
In the present case defendant Kron flatly and emphatically denied having any assets. But his denial of assets alone should not suffice to bar appointment of a receiver in aid of execution where by his own admission he had substantial earnings and a comfortable life style. Kron admitted receiving substantial income in recent years from his consulting business, *515 in excess of $100,000 in 1980. This income was sufficient to support him and his wife and to provide for his sons' education at prestigious institutions during the period that the bank was attempting to execute on the default judgment against him. Although admitting receipt of substantial sums in close proximity to the date of the 1981 depositions, he could not recall the expenditures that allegedly depleted them. Kron denied having accounts receivable, but admitted that his clients paid him on a regular basis. He continues to conduct his consulting business.
Because of Kron's admissions, his assertion that he has no assets and few resources was not credible. At the very least he has substantial income from his business and has neither satisfactorily accounted for its disposition nor attempted to accommodate his long-standing debt to plaintiff. The record permits this court to infer that defendant may well have had payments due him at the time of denial of relief or in the near future for services rendered and will continue to derive substantial income from his business. Although some of this future income may not be technically subject to levy at this time, the purpose of the remedy sought is to reach precisely this potential type of asset so it may be applied to payment of just debts. See Fuller, supra, at 302-303.
In evaluating the sufficiency of the evidence on record this court must bear in mind Kron's recalcitrant attitude and his evasive or negative responses to legitimate questions, thus frustrating the bank's legitimate attempts to ascertain his assets. See Seyfert, supra, at 431; Fuller, supra, at 303. See also DeGraaff v. DeGraaff, 163 N.J. Super. 578, 583 (App.Div. 1978) (discoverable tax returns may be examined in camera and redacted to protect legitimate privacy interests); Finnegan v. Coll, 59 N.J. Super. 353, 356-358 (Law Div. 1960) (tax returns and client list of engineer discoverable). The record creates the strong inference that Kron has arranged his financial affairs to conceal assets from creditors. The need for a receiver endowed with the court's authority to investigate Kron's holdings is clear. Because he has already flouted orders to produce his tax returns, *516 the bank should not be compelled to seek additional orders or to track Kron down continuously for service of process. The bank's attorney states "that no purpose would be served by incarcerating Kron." Especially in these days of burgeoning jail and prison populations, Worthington v. Fauver, 88 N.J. 183, 197 (1982), we agree that resort to a receiver in aid of execution under N.J.S.A. 2A:17-66 is a more constructive and less draconian alternative than civil incarceration in aid of litigants rights. R. 1:10-5. We are not, however, to be understood to bar such recourse should the approach we recommend be unproductive.
We conclude that denial of the plaintiff bank's application for a receiver in aid of execution was, in the circumstances, a mistaken exercise of discretion. Less severe remedies have failed the creditor. The debtor obviously has access to resources which would permit reasonable periodic payments on this just debt. He has flouted the court's orders and consistently evaded its processes. Any inconvenience to him from a receivership is by his own invitation.
Reversed and remanded for appointment of a receiver in aid of execution.