839 A.2d 52 (2003)
365 N.J. Super. 241
RAVIN, SARASOHN, COOK, BAUMGARTEN, FISCH & ROSEN, P.C., Plaintiff-Appellant,
v.
LOWENSTEIN SANDLER, P.C., Defendant, and
Kenneth A. Rosen, Sharon L. Levine and Steven E. Brawer, Defendants/Third-Party Plaintiffs Respondents,
v.
David N. Ravin, Joseph L. Cook, Mark Baumgarten and Jeffrey H. Fisch, Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 2003.
Decided December 18, 2003.
*53 David A. Mazie, Livingston, argued the cause for appellant (Nagel, Rice & Mazie, *54 attorneys; Mr. Mazie, of counsel; Mr. Mazie, Randee M. Matloff and David M. Freeman, on the brief).
Joseph P. La Sala, Morristown, argued the cause for defendants/third-party plaintiffs-respondents Kenneth A. Rosen, Sharon L. Levine and Steven E. Brawer (McElroy, Deutsch & Mulvaney, attorneys; Mr. La Sala, of counsel; Mr. La Sala, Louis A. Modugno and William F. O'Connor, on the brief).
Before Judges SKILLMAN, COBURN and FISHER.
The opinion of the court was delivered by COBURN, J.A.D.
During arbitration under the rules of the American Arbitration Association ("AAA"), the arbitrator decided that he was authorized to appoint a receiver to administer plaintiff. Plaintiff asked the Law Division to enjoin the appointment. The individual defendants, Rosen, Levine, and Brawer, opposed the motion on the ground that the court lacked jurisdiction and on the merits. The court rejected the jurisdictional argument, but denied plaintiff's motion on the merits. We granted leave to appeal. R. 2:5-6.
This case was previously before us on an appeal brought by the individual defendants from a Law Division order denying submission of their disputes with plaintiff to arbitration. Of necessity, we include in our statement of facts the facts of that disposition to place in context our rejection of the claim of these defendants that the trial court lacked jurisdiction to rule on the arbitrator's authority to appoint a receiver. Because neither the parties' arbitration agreement nor the AAA rules can be fairly read to so empower the arbitrator, we reverse.

I
In February 2000, the individual defendants withdrew as shareholders from plaintiff, a law firm organized as a professional corporation, taking with them a substantial portion of its business to another law firm, defendant Lowenstein Sandler. Plaintiff sued all defendants in the Law Division, alleging various forms of tortious conduct. Relying on the written contract of plaintiff's shareholders, which provided for arbitration, the individual defendants moved to stay or dismiss the action. The Law Division denied their motion. We granted leave to appeal, reversed, and remanded "for entry of an order staying further proceedings pending arbitration of plaintiff's claims against the individual defendants." Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Rosen, No. A-2106-00T2 (App.Div. November 28, 2001). On remand, the Law Division entered an order staying the action against Lowenstein Sandler, but dismissing rather than staying plaintiff's action against the individual defendants.
An arbitrator was selected to determine the disputes between plaintiff and the individual defendants, who subsequently asked the arbitrator to appoint a receiver to administer plaintiff. They claimed that plaintiff was wasting its assets and endangering their ability to collect on their monetary claims. The arbitrator ruled that he had the authority to appoint either a statutory or custodial receiver but would await further submissions before he decided whether to exercise that authority.
Plaintiff returned to the trial court, seeking an order barring the arbitrator's creation of either form of receivership. The individual defendants argued that the court lacked jurisdiction because of its previous order dismissing them from the case. They also argued that the arbitrator had *55 correctly interpreted the parties' agreement and the extent of his authority under the AAA rules and the law. Although the court rejected the jurisdictional argument, it decided not to interfere with the arbitrator's decision because that determination appeared to be a reasonable construction of the contract.
The shareholders' contract provides that "the parties shall be required to resort exclusively to arbitration ... in accordance with the then prevailing rules of the [AAA] for commercial arbitrations." The relevant AAA rules are R 34(a) and (c). Subsection (a) defines the arbitrator's equitable powers in general terms, without mentioning receivership:
The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.
Subsection (c) acknowledges that the parties may seek interim ancillary relief in aid of the arbitration from the court in these words:
A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

II
As a preliminary matter, we reject the individual defendants' argument that the trial court's order dismissing them from the case, following our remand, deprived that court of jurisdiction to determine whether the arbitrator could appoint a receiver. In general, entry of an order staying a Law Division action pending arbitration, the precise relief set forth in section 4 of the statute governing this arbitration, N.J.S.A. 2A:24-1 to -11[1], does not divest the court of jurisdiction. A party is entitled to maintain the stayed action so that a prompt application may be made to confirm an arbitration award, Shribman v. Miller, 60 N.J.Super. 182, 196, 158 A.2d 432, 439-40 (Ch.Div.1960), and to facilitate resort to the court for interim relief, such as an injunction or a receivership, in aid of arbitration, Rosenthal v. Berman, 14 N.J.Super. 348, 352, 82 A.2d 455, 457 (App.Div.1951).
The trial court's dismissal of the case against the individual defendants did not undercut application of those principles. When a case is remanded, as occurred here, the trial court must "obey in the particular case the mandate of the appellate court precisely as it is written." Flanigan v. McFeely, 20 N.J. 414, 420, 120 A.2d 102, 105 (1956). Since we directed entry of an order by the trial court staying the action pending arbitration, it had no authority to dismiss the case against the individual defendants. Ibid.; In re Application of the Plainfield-Union Water Co., 14 N.J. 296, 302-03, 102 A.2d 1, 4 (1954). Therefore, its order was to that extent a nullity, which it properly ignored when asked to rule on the merits of plaintiff's motion.

III
An "arbitrator has no authority beyond that delegated ... by the parties." Local No. 153, Office & Prof'l Employees Int'l Union v. Trust Co. of N.J., 105 N.J. 442, 450, 522 A.2d 992, 996 (1987). Therefore, "[i]n the absence of an express contract provision conferring authority on *56 the arbitrator, it is uniquely within the province of the courts, and not arbitrators, to make the initial and threshold determination regarding the arbitrability of a particular issue." Laborers' Local Union Nos. 472 & 172 v. Interstate Curb & Sidewalk, 90 N.J. 456, 463, 448 A.2d 980, 984 (1982).
In this case, as acknowledged by the arbitrator himself, neither the contract nor the incorporated AAA rules expressly empowered him to appoint a receiver, but since a receivership almost invariably involves injunctive relief and is a measure for conservation of property, a literal, though perhaps expansive, reading of R-34(a) arguably supports an interpretation allowing for such relief from the arbitrator. Running counter to that interpretation are two fundamental legal principles governing interpretation of contracts; New Jersey case and statutory law governing receiverships, which supports the expectation that receivers will be court-appointed; and a California decision specifically denying arbitrators the power to appoint a receiver.
The first interpretive principle, as famously expressed by Judge Learned Hand, is that "[t]here is no surer way to misread any document than to read it literally...." Guiseppi v. Walling, 144 F.2d 608, 624 (2nd Cir.1944), aff'd sub nom. Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945) (quoted with approval in Schierstead v. City of Brigantine, 29 N.J. 220, 231, 148 A.2d 591, 596 (1959)). The second interpretive principle is that "[p]arties in New Jersey are ... presumed to have contracted with reference to the existing law." Silverstein v. Keane, 19 N.J. 1, 13, 115 A.2d 1, 7 (1955). The existing receivership law forming the contextual reference point for the contract in question may be briefly described as follows.
Statutory receiverships are discussed in First National State Bank v. Kron, 190 N.J.Super. 510, 464 A.2d 1146 (App.Div.) certif. denied, 95 N.J. 204, 470 A.2d 424 (1983). We emphasized the rarity of resort to this device, as well as the delicacy of the decision, in these words:
The appointment of any receiver is an extraordinary remedy, and involves the delicate exercise of judicial discretion. It has been said that appointment of a receiver where corporate assets are involved may proceed only upon imposing and persuasive proof. This requirement stems in part from the "paralytic" effect of a receiver on the corporate affairs.
[Id. at 513, 464 A.2d at 1148 (citations omitted).]
And in Eelman v. Johnson Products Co., 103 N.J.Eq. 294, 143 A. 326 (E. & A.1928), while rejecting the demand of stockholders that they were entitled to name a statutory receiver for the corporation, the court observed that "the appointment of a receiver is a judicial act and the right to name him [or her] belongs to the court." Id. at 296, 143 A. at 327. Moreover, when the Legislature created the concept of statutory receiverships, it specifically provided that jurisdiction for an action to place a corporation into receivership would be in the Superior Court. N.J.S.A. 14A:14-2(1).
Custodial receiverships are discussed in Roach v. Margulies, 42 N.J.Super. 243, 126 A.2d 45 (App.Div.1956), as a device for courts of equity, which should look to them only as a last resort, thoughts that were expressed in these words:
It is well recognized that a court of equity has inherent power in a proper case to appoint a receiver for a corporation on the ground of gross or fraudulent mismanagement by corporate officers or gross abuse of trust or general dereliction of duty. And solvency of the *57 corporation is not a bar to such action. However, such drastic action is avoided where possible, and if the relief necessary can be accomplished by some less onerous expedient.
[Id. at 245, 126 A.2d at 46-47 (citations omitted).]
The power of a custodial receiver, like that of a statutory receiver, subject of course to the court's discretion, is great. It can include the power to sell assets of the company under the court's supervision and, if necessary, the company itself. In re Valley Road Sewerage Co., 295 N.J.Super. 278, 292-93, 685 A.2d 11, 18 (App.Div. 1996), aff'd, 154 N.J. 224, 239-41, 712 A.2d 653, 660-62 (1998).
In Barclays Bank v. Davidson Avenue Associates, 274 N.J.Super. 519, 644 A.2d 685 (App.Div.1994), we ruled that "[a] contractual provision for the appointment of a rent receiver upon mortgage default usurps the judicial function and thereby contravenes public policy[,]" id. at 523, 644 A.2d at 687, and in Shribman, supra, the Chancery judge observed that "court action may be necessary to obtain a preliminary injunction, or a custodial receiver, ... which forms of relief may not be available in arbitration." 60 N.J.Super. at 195, 158 A.2d at 439.
In California, the only jurisdiction which appears to have dealt specifically with the issue, the court held that an arbitrator may not be empowered by the parties to appoint a receiver for a corporation. Marsch v. Williams, 23 Cal.App.4th 238, 28 Cal.Rptr.2d 402 (1994). The court reasoned as follows:
There is no power vested in the courts more jealously guarded or safeguarded than this very power to appoint a receiver to take, for the court, the possession and control of the property of others, and this is because ... the exercise of the power may mean the divesting the owner of his lawful right to remain in possession of his property....
... Given the continuing nature of a receiver's duties and the court's supervision, any addition to the type of tribunals empowered to appoint and supervise receivers would represent a fairly profound change in our receivership law.
In sum, the precedents we have examined strongly suggest we are not at liberty to create or recognize a nonstatutory receiver, even where the parties have agreed to the appointment of one.
[Id. at 408-09 (citations omitted)]
The individual defendants attempt to distinguish Marsch by noting that the California arbitration statute specifically provides for an arbitration-party to apply to the court for a receiver in aid of arbitration. Id. at 407. However, New Jersey, like the AAA, has long recognized the right of an arbitration-party to make just such an application to the court. Rosenthal, supra, 14 N.J.Super. at 352, 82 A.2d at 457.
It is generally recognized that "[w]hile arbitrators exercise judicial functions, and are often considered to be quasi-judicial officers[,] arbitrators are not vested with all of the powers of a judge...." 21 Williston on Contracts § 57:77 (Lord ed. 2001) (footnote omitted). In light of that principle and the cited cases and statute, we doubt whether an arbitrator may be empowered by contracting parties to appoint a statutory or a custodial receiver.[2] *58 However, we need not decide the point since in this case we are satisfied that the parties did not agree to so empower the arbitrator. They certainly did not do so expressly; and, given the legal context surrounding their agreement, which at least strongly suggests that receivers are the business of courts and not of arbitrators, we are satisfied that they did not do so implicitly by their reference to the AAA rules. Moreover, there is a vast difference between the general concept of "injunctive relief," the phrase used by the AAA in R 34(a), and the appointment of a receiver, whether statutory or custodial, an act that usually deprives a corporation entirely of the ability to govern itself. A reasonable interpretation of the parties' contract does not support the proposition that plaintiff agreed to subject its governance to the control of a receiver answerable, in turn, to an arbitrator whose awards are almost entirely unreviewable in court. Tretina Printing, Inc. v. Fitzpatrick & Assocs. Inc., 135 N.J. 349, 358, 640 A.2d 788, 792-93 (1994). Therefore, the order is reversed and the case is remanded for entry of an order enjoining appointment of a receiver by the arbitrator.
Reversed and remanded.
FISHER, J.A.D., concurring.
The arbitrator determined, in a written decision, that he possessed the power to appoint either a "statutory or custodial receiver" to "administer" plaintiff's assets. The majority has stated its "doubt" about the existence of such power and reversed the trial court's refusal to enjoin the arbitrator's appointment of a statutory or custodial receiver. I too reject the arbitrator's announcement of his authority to appoint a statutory receiver and wholeheartedly agree with my colleagues in doubting the arbitrator's power to appoint a custodial receiver to the extent such office is defined as being similar to that of a statutory receiver. However, because custodial receivers are traditionally viewed as having limited powers designed solely to preserve rather than destroy a corporation or its assets, I would proceed beyond what the majority has held and also provide guidance to the litigants as *59 to the arbitrator's authority to appoint a custodial receiver in its classic sense.
As the majority correctly observes, an arbitrator has "no authority beyond that delegated ... by the parties," quoting Local No. 153, Office & Prof'l Emp. Int'l Union v. Trust Co. of N.J., 105 N.J. 442, 450, 522 A.2d 992, 996 (1987). In this case, the plaintiff law firm and its members agreed that the arbitration of any disputes would be held "in accordance with the then prevailing rules of the American Arbitration Association for commercial arbitrations." Those rules include R-34A which states that "[t]he arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property." I agree that the power to appoint a statutory receiver for the purpose of liquidating the plaintiff is not encompassed by R-34A and that it is not a remedy which an arbitrator may issue because the Legislature has entrusted that power to the Superior Court alone. N.J.S.A. 14A:14-2(1).
In doubting the power of an arbitrator to appoint a custodial receiver, the majority has determined that such an office is akin to the office of a statutory receiver, observing that a custodial receiver has the power "to sell assets of the company under the court's supervision and, if necessary, the company itself," citing In re Valley Rd. Sewerage Co., 295 N.J.Super. 278, 292-93, 685 A.2d 11, 18 (App.Div.1996), aff'd, 154 N.J. 224, 239-41, 712 A.2d 653, 660-62 (1998). I would agree that there are prior decisions which recognize the power of a court of equity to expand the traditional role of a custodial receiver so as to permit the sale or liquidation of the corporation itself.
But the scope of the powers of a custodial receiver are normally limited to preserving the corporation or its assets pendente lite. In Smith v. Washington Cas. Ins. Co., 110 N.J.Eq. 122, 136-37, 159 A. 510, 517 (Ch.Div.1932), Vice-Chancellor Berry described this limitation and the difference between a statutory receiver and a custodial receiver in the following way:
... there is a plain distinction between the appointment of a custodial receiver of a corporation pursuant to the court's general equity powers, and the appointment of a statutory receiver. The appointment of a custodial receiver is a pendente lite appointment, does not vest title to the corporate assets in the receiver, and does not require dissolution of the corporation. On the other hand, such title vests in a statutory receiver, and the dissolution of the corporation by decree of the court usually, but not always, follows.
This distinction has been recognized in numerous other cases, including State v. East Shores, Inc., 131 N.J.Super. 300, 309-10, 329 A.2d 585, 590 (Ch.Div.1974) ("[a] custodial receiver is appointed to preserve the corporate assets for a prescribed period, usually pending the litigation, and acquires no legal title and is devoid of the power to liquidate and dissolve") and Riddle v. Mary A. Riddle Co., 140 N.J.Eq. 315, 318, 54 A.2d 607, 609 (Ch.Div.1947) ("a custodial receiver ... is an appointment pendente lite in order that the subject matter of the suit may be preserved and to protect the interest of the litigants").
In essence, the appointment of a custodial receiver is "to preserve" a corporation and its assets and, unlike a statutory receiver, is not "designed to destroy the corporate existency." Rothman v. Harmyl Inn, Inc., 61 N.J.Super. 74, 80, 160 A.2d 148, 151-52 (App.Div.1960), citing Smith, supra. As Rothman demonstrates, the procedure traditionally followed in such circumstances called for the appointment of a custodial receiver to preserve *60 assets and, if circumstances later required, the conversion of the custodial receiver into a statutory receiver for the purpose of liquidating the corporate assets and destroying its existence. I agree that the arbitrator does not possess the power to take this last step, and to the extent that the office of custodial receiver is defined in a manner which renders it indistinguishable from a statutory receiver, I also agree that the arbitrator likewise lacks the power to make such an appointment.
However, I see nothing in R-34A which would preclude an arbitrator from appointing a custodial receiver whose role would be limited to preserving and protecting the assets of plaintiff and the interests of the litigants. To the contrary, R-34A expressly authorizes the arbitrator to "take whatever interim measures ... [are] deem[ed] necessary, including ... measures for the protection or conservation of property...." This rule encompasses, in my opinion, the power to appoint a custodial receiver in the limited role described in the authorities cited above.
I concur in the court's judgment because I do not view the arbitrator's decision as declaring his power to appoint a custodial receiver as a pendente lite preserver of assets. I discern from the arbitrator's decision his belief that he had the power to appoint a custodial receiver in order to act in a manner similar to a statutory receiver. Accordingly, I join my colleagues in doubting the power to appoint a custodial receiver so broadly defined. I write separately only to observe that the office of custodial receiver has also been defined in a more limited way, as described by Judge Muir in East Shores, supra, 131 N.J.Super. at 309-10, 329 A.2d 585, 590-91 and that the rules governing the powers of the arbitrator would permit such an appointment as well as the appointment of a special fiscal agent as defined in Roach v. Margulies, 42 N.J.Super. 243, 245, 126 A.2d 45 (App.Div.1956).
NOTES
[1] The new arbitration statute, L. 2003, c. 95, N.J.S.A. 2A:23B-1 to -32, contains like provisions. N.J.S.A. 2A:23B-7 f and g.
[2] Section 8 of the new arbitration act addresses the subject of provisional remedies in the following manner:

a. Before an arbitrator is appointed and is authorized and able to act, the court, in such summary action upon application of a party to an arbitration proceeding and for good cause shown, may enter an order for provisional remedies to protect the effectiveness of the arbitration proceeding to the same extent and pursuant to the same conditions as if the controversy were the subject of a civil action.
b. After an arbitrator is appointed and is authorized and able to act:
(1) the arbitrator may issue orders for provisional remedies, including interim awards, as the arbitrator finds necessary to protect the effectiveness of the arbitration proceeding and to promote the fair and expeditious resolution of the controversy, to the same extent and pursuant to the same conditions as if the controversy were the subject of a civil action; and
(2) a party to an arbitration proceeding may move the court for a provisional remedy only if the matter is urgent and the arbitrator is not able to act timely or the arbitrator cannot provide an adequate remedy.
c. A party does not waive a right of arbitration by making an application pursuant to subsection a. or b. of this section.
[N.J.S.A. 2A:23B-8 (emphasis added).]
Since subsection b(1) only mentions "provisional remedies" in general, while omitting reference to receiverships in particular, we would not be inclined to read it as authorizing arbitrators to appoint receivers. Furthermore, since an arbitrator's decisions, if resisted, must be enforced in court, it is doubtful that an arbitrator could effectively monitor a receivership in a timely and adequate manner. Therefore subsection b(2) tends to support the proposition that the severe step of receivership should be reserved entirely to the courts. However, we defer ruling on the issue because the new arbitration act is not applicable to this case. N.J.S.A. 2A:23B-3 and -31.