163 A.3d 362

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST A, PLAINTIFF, v. ROBERT ZIMMERMAN; MRS. ZIMMERMAN, UNKNOWN SPOUSE OF ROBERT ZIMMERMAN; 11TH SURF CONDOMINIUM ASSOCIATION; HIRSCH OPTICAL CORPORATION; COUNTY OF ATLANTIC, DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Cape May County

Decided: March 6, 2017

*Mark A. Roney*, for plaintiff (*Hill Wallack LLP*, attorneys).

*Robert Zimmerman*, defendant pro se.

PICKERING, J.S.C.

## NATURE OF THE MOTION

This action is to foreclose on a single-family residential condominium unit. Plaintiff filed a motion on August 29, 2016, seeking an order to substitute plaintiff and to appoint a custodial receiver for the subject property. On November 29, 2016, this court granted plaintiff's motion to substitute plaintiff and denied the motion to appoint a custodial receiver.

Plaintiff filed this motion for reconsideration of the order that denied plaintiff's motion to appoint a custodial receiver. In support of its motion, plaintiff provides the certification of Elizabeth Gonzales dated August 19, 2016, the same certification submitted with the original motion, and a letter brief from plaintiff's counsel.

The motion is unopposed.

## LAW

### RECONSIDERATION

The standard for a motion for reconsideration is set forth in *Cummings v. Bahr*, 295 *N.J.Super.* 374, 384, 685 *A.2d* 60 (App. Div. 1996) (quoting *D'Atria v. D'Atria*, 242 *N.J.Super.* 392, 401–402, 576 *A.2d* 957 (Ch. Div. 1990)): "Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either 1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence .... Thus, the Court must be sensitive and scrupulous in its analysis of the issues in a motion for reconsideration."

### RECEIVERS

The appointment of a receiver is rare. "The appointment of any receiver is an extraordinary remedy, and involves the delicate exercise of judicial discretion." *Ravin, Sarasohn, Cook, Baumgar-*

*ten, Fisch & Rosen, P.C. v. Lowenstein Sandler, P.C.*, 365 *N.J.Super.* 241, 248–49, 839 *A.2d* 52 (App. Div. 2003) (citing *First Nat'l State Bank v. Kron*, 190 *N.J.Super.* 510, 513, 464 *A.2d* 1146 (App. Div.), *certif. denied*, 95 *N.J.* 204, 470 *A.2d* 424 (1983)). The Appellate Division described the use of such receiverships as a "rarity." *Id.* at 248–49, 839 *A.2d* 52.

 Custodial receiverships are the device of courts of equity, "which should look to them only as a last resort." *Id.* at 249, 839 *A.2d* 52. "The power of a custodial receiver, like that of a statutory receiver, subject of course to the court's discretion, is great. It can include the power to sell assets of the company under the court's supervision and, if necessary, the company itself." *Ibid. See Roach v. Margulies*, 42 *N.J.Super.* 243, 126 *A.2d* 45 (App. Div. 1956) (cited by plaintiff in its original motion, involving a corporation, allegations of improper accounting practices, and self-dealing by the defendant directors).

Rent receivers are sometimes used in foreclosure actions. In *Kaufman v. 53 Duncan Investors, L.P.* 368 *N.J.Super.* 501, 847 *A.2d* 35 (App. Div. 2004), a rent receiver had been appointed, served for eleven years, sought to be discharged, paid for its services and reimbursed for attorney's fees it had fronted. The court analyzed the difference between certain types of receivers: "[*Rule*] 4:53–3 and *R.* 4:53–5 . . . apply to statutory receivers, custodial receivers, and other trustees for distressed business associations and not to rent receivers . . . ." *Id.* at 505, 847 *A.2d* 35. The court acknowledged the "differences between 'equity receiverships,' imposed for the safeguarding or liquidation of corporations and partnerships, and rent receivers, imposed for the protection of a mortgagee." *Ibid.* In *Kaufman*, the court noted another difference between the types of receiverships: "The authority to appoint a rent receiver is purely contractual, normally arising from the provisions of a mortgage or other loan documents; its purpose is to protect the mortgagee's interests by imposing a court-supervised, disinterested person to collect the rents and pay expenses pending the ultimate disposition of the

mortgaged premises." *Id.* at 506, 847 *A*.2d 35, (citing *Fidelity Union Trust Co. v. Pasternack*, 123 *N.J. Eq.* 181, 183–84, 196 *A.* 469 (E. & A. 1938)).

Plaintiff provides no case where a rent receiver was appointed for a single-family residential home or residential condominium unit in foreclosure.

Plaintiff provides no case where a custodial receiver was appointed for a single-family residential dwelling or condominium unit in foreclosure.

Plaintiff cites to four cases for the proposition that the court can appoint a custodial receiver, all of which are distinguishable from this case.

*Linn v. Kay Corp.*, 123 *N.J. Eq.* 564, 199 *A.* 405 (E. & A. 1938), involved a four-story apartment house with twenty separate apartments. The defendant owner had given written authority to an agent to manage the apartment house. The Court stated it seemed proper that a receiver of security be appointed for the protection of the mortgagee. This case, however, is about a single-family condominium unit, not an apartment house; it does not need to be managed, and the owner never has given or assigned his or her right to manage the property to anyone.

*Trust Co. of NJ v. Lusbie, Realty Co.*, 124 *N.J. Eq.* 265, 1 *A*.2d 374 (E. & A. 1938), concerned a foreclosure on property that consisted of a three-story brick building containing a moving picture theatre and stores on the first floor, and two upper floors with offices. Affidavits satisfied the court that the building was run-down and in a poor location for a moving picture theater; a renovation would cost over $20,000. The court allowed the appointment of a rent receiver. In this case, by contrast, this is a single family home, not a commercial structure with a theater and office space. Here, plaintiff seeks a custodial receiver, not a rent receiver. Further, there is no evidence that the building is deteriorating.

In *Tucker v. Nabo Constr. Corp.*, 108 *N.J. Eq.* 449, 451, 155 *A.* 460 (Ch. 1931), the mortgage allowed for the lender to apply for

the appointment of a receiver for rents and profits in the event of a default. That is simply not the case here.

In *Stewart v. Fairchild–Baldwin Co.*, 91 *N.J. Eq.* 86, 91, 108 *A.* 301 (E. & A. 1919), there was an office building with numerous tenants, and the only issue before the court was whether the rent receiver could collect rents that had accrued before the receiver was appointed. Here, plaintiff seeks a custodial receiver, not a rent receiver. Further, this is a single-family residential condominium unit, not an office building. Finally, the issue of collecting pre-appointment rents is not before the court.

Not one of these four cases gives the rent receiver the right to sell the property. Not one involves a custodial receiver. None concerns a single-family residential dwelling unit.

## APPOINTING A CUSTODIAL RECEIVER

■ Plaintiff asserts that if its security is precarious or uncertain, a custodial receiver can be appointed. Plaintiff cites to *Tross, Scott T., New Jersey Foreclosure Law & Practice*, Volume I, Section 8–4:1 at 146 (2001) and lists five factors the court is to consider when appointing a custodial receiver. Plaintiff does not direct the court to any case law that states these five factors are to be considered.

Even if the court were to apply the factors suggested by plaintiff, the court determines it is not appropriate to appoint a custodial receiver in this case.

The first factor cited by plaintiff is the inadequacy of the security to satisfy the debt. In this case, plaintiff asserts that the property is "underwater" by $660,000. Plaintiff asserts that the property has a value of $389,000 and indebtedness of $1,050,191.66. One reason the principal balance exceeds the fair market value of the property is because plaintiff waited so long to foreclose. The default occurred on May 1, 2008. Suit was not filed until June 3, 2015. By that time, the accumulated interest, costs and fees exceeded the fair market value. Perhaps if suit had been filed promptly, the debt would have been secured. To allow this factor

to weigh in favor of plaintiff would encourage lenders to wait years to file suit, allow the debt balance to accumulate to exceed the fair market value, and then ask the court to appoint a custodial receiver. The court finds that in this circumstance this factor does not weigh in favor of the appointment of a receiver.

The second factor is the inability of the mortgagor to satisfy any deficiency or the absence of personal liability on the part of the mortgagor in regards to the mortgage debt. There is no evidence before the court with regard to the ability of the mortgagor to satisfy any deficiency. This factor does not weigh in favor of the appointment of a receiver.

The third factor is the failure by the mortgagor to pay taxes or insurance premiums. Here, plaintiff provides a certification from Gonzales that indicates that interest, fees, and costs accrue daily, but nowhere does the certification indicate that plaintiff is paying taxes and insurance on the property. Without such evidence, this factor does not weigh in favor of the appointment of a receiver.

The fourth factor is where there is evidence of waste or misappropriation of rents. There is no evidence of waste or misappropriation of rents. Gonzalez asserts in her certification that the property has been abandoned. It is an unsupported assertion. She does not state that she has been to the property, and offers no facts or observations from her personal knowledge to indicate that the property has been abandoned.

Gonzalez asserts that the property is deteriorating. It is an unsupported assertion. Gonzalez does not state that she has been to the property, and she does not give any indication upon what facts she knows or observations she made to indicate that the property is deteriorating.

Further, if the property is abandoned, then there are no rents to misappropriate, and there is no one at the property engaged in wasting the property. This fourth factor does not weigh in favor of the appointment of a receiver.

The fifth factor is the mortgagor's failure to make interest payments. The certification indicates that a payment has not been paid since May 2008. This factor weighs in favor of appointing a receiver.

The court finds that the five factors suggested by plaintiff do not weigh in favor of a finding that the plaintiff's security is precarious or uncertain. The factors do not weigh in favor of appointing a custodial receiver.

Further, it is not equitable to appoint a custodial receiver. Plaintiff represents that this mortgage was made on June 16, 2006. It went into default on May 1, 2008. As of August 10, 2016, the total amount allegedly due was $1,050,191.66. As of September 6, 2015, the fair market value of the property was $389,000. According to Gonzalez's certification, the mortgage was first assigned on October 22, 2008, after the default. The mortgage was assigned again in 2014, again in 2015, and the current plaintiff became the successor mortgagee in October 2015. Clearly, the principal exceeded the fair market value of the property when plaintiff became successor mortgagee. Plaintiff knew or should have known when it became successor mortgagee that the security was inadequate to satisfy the debt. Plaintiff knew or should have known if the mortgagor had an ability to satisfy any deficiency. Plaintiff knew or should have known if its predecessor had paid the taxes and insurance and if there was evidence of waste or misappropriation of rents. Lastly, plaintiff surely knew or should have known that the mortgage was in default when it became successor mortgagee.

This is not a situation where the original mortgagee was not getting what it had agreed to (repayment with interest) because the mortgagor had defaulted, and the mortgagee incurred costs such as payment of taxes and insurance. Here, plaintiff became successor mortgagee long after the default had occurred, after the action in foreclosure had been filed, and with the ability to fully investigate the likelihood that the debt could be repaid or not. In this case, between the successor mortgagee's request for a custo-

dial receiver and the mortgagor's rights, equity does not favor appointing a custodial receiver.

In *Kaufman, supra,* 368 *N.J.Super.* at 506, 847 *A.*2d 35, the Appellate Division stated that the basis for the appointment of a rent receiver is a written contractual agreement. The court finds that the defendant never agreed to the appointment of a custodial receiver. There is no notice to the mortgagor that in the event of default the mortgagee could petition the court to appoint a custodial receiver to take possession of the property, collect rent, and even sell the property. Defendant was never notified that a custodial receiver was a remedy in the event of default. In the context of a foreclosure action of a single-family residential dwelling or condominium unit, the court finds that defendant homeowner must have agreed to the appointment of a custodial receiver as evidenced by a written statement in the mortgage documents before a custodial receiver can be appointed. No such written notice exists in this case.

■ The appointment of a custodial receiver in a foreclosure action of a single family home or condominium unit is in contravention of the Fair Foreclosure Act. *N.J.S.A.* 2A:50–53 to –73. "The [Fair Foreclosure Act] was enacted in 1995 in an attempt to provide protection to homeowners facing foreclosure." *Sturdy Sav. Bank v. Roberts,* 427 *N.J.Super.* 27, 33, 46 *A.*3d 632 (Ch. 2012), (citing *N.J.S.A.* 2A:50–54). The Act requires a variety of notices, procedural requirements, and protections to homeowners, all designed to give homeowners numerous chances to cure the default and avoid foreclosure. Nowhere does the Fair Foreclosure Act allow the appointment of a custodial receiver. In fact, the appointment of a custodial receiver with the power to rent the property and sell the property would deny the homeowner the ability to cure the default and save their home, which is the stated purpose of the Act.

The court notes that the Fair Foreclosure Act has an optional procedure for cases where the property is abandoned or where the aggregate amount of liens is more than 92% of the Fair Market

Value of the mortgaged property. *N.J.S.A.* 2A:50–63. If this property is abandoned or "underwater" as plaintiff alleges, plaintiff can use that accelerated procedure.

■ Plaintiff claims that the pendente lite sale of a mortgaged property is authorized by *N.J.S.A.* 2A:50–31.

> When, in an action for the foreclosure or satisfaction of a mortgage covering real or personal property, or both, the property mortgaged is of such a character or so situated as to make it liable to deteriorate in value or to make its care or preservation difficult or expensive pending the determination of the action, the superior court may, before judgment, upon the application of any party to the action, order a sale of the mortgaged property to be made at public or private sale through a receiver, sheriff, or otherwise, as the court may direct. The proceeds of any such sale shall be brought into court, there to remain subject to the same liens and equities of the parties in interest as was the mortgaged property and to be disposed of as the court shall, by order or judgment, direct.
>
> [*N.J.S.A.* 2A:50–31.]

There is no evidence before this court that this property is of such a character or is so situated as to make it liable to deteriorate in value or to make its care or preservation difficult or expensive pending a final determination in the foreclosure action. The court finds that *N.J.S.A* 2A:50–31 does not apply to this case.

For all of the above reasons, the court finds that its decision to deny the appointment of a custodial receiver was not palpably incorrect and therefore denies plaintiff's motion for reconsideration.

## CONCLUSION

Plaintiff's motion for reconsideration is hereby denied.