847 A.2d 35

ELEANOR KAUFMAN, EDWARD J. MAHONEY, CAROL HAKIM, LYNN B. DELPRADO, HUNG WONG, KAM MAR WONG, ANGELO M. BONOAM, JR., EUGENIO R. VILLALUZ, ARMULTO E. MARTINEZ, PEGGY CHAM, EDWIN A. BUCH, ASTER J. MERERETE, LATEW GETAHUN, MICHAEL M. CROWLEY, LESLIE JO MORGAN, SHAWN BANNER, AND PHYLISE BANNER, INDIVIDUALLY AND ON BEHALF OF THE BERKLEY-CARTERET ARMS ASSOCIATION, INC., A NEW JERSEY NON-PROFIT CORPORATION, PLAINTIFFS, v. 53 DUNCAN INVESTORS, L.P., SEGALL, EDWARD SEGALL, AND LEONARD BAYER, DEFENDANTS.

HALPAT PARTNERSHIP LIMITED, A NEW JERSEY LIMITED PARTNERSHIP, PLAINTIFF-RESPONDENT/CROSS-APPELLANT, v. 53 DUNCAN INVESTORS, L.P., A NEW JERSEY LIMITED PARTNERSHIP, AND BERKELEY-CARTERET ARMS, A CONDOMINIUM, DEFENDANTS, AND ZEPKA/GOLDBERG REAL ESTATE COMPANY, INC., APPELLANT/CROSS-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 16, 2004—Decided May 3, 2004.

Before Judges COBURN, WELLS and C.S. FISHER.

*Bross, Cummings & Pereira,* attorneys for appellant/cross-respondent (*Helen A. Cummings,* on the brief).

*Koles, Burke & Bustillo,* attorneys for respondent/cross-appellant (*Jonathan Koles and Paul Laracy,* on the brief).

The opinion of the court was delivered by

FISHER, J.A.D.

After eleven years, the rent receiver in these consolidated actions sought, among other things, to be discharged and permitted an allowance for the attorneys' fees it had incurred. The request for fees was disallowed solely because the rent receiver never sought the court's approval of its employment of its attorneys prior to the incurring of those fees. We reject the adoption of such an "absolute rule" in these circumstances, and remand for consideration of the necessity and reasonableness of the fees sought.

I

On July 13, 1990, appellant Zepka/Goldberg Real Estate Company, Inc. (Zepka) was appointed to act as rent receiver for sixteen condominium units in Jersey City; in addition, because of the poor financial condition of the condominium association, Zepka assumed the role of the association's property manager. After serving as rent receiver for eleven years, Zepka moved, on August 15, 2001, to be discharged and compensated for its troubles and expenses.

An order was entered by a Law Division judge on September 24, 2001, which discharged Zepka, but required Zepka to file a final accounting by October 14, 2001. This deadline was later extended to January 31, 2002. Zepka filed an accounting within that time frame which lumped together the amounts received and paid out during the entire period of its stewardship. By order dated March 1, 2002, Zepka was directed to render a final accounting which segregated the income and expenses "per unit, per month for the entire term of the receivership." Zepka complied. The March 1, 2002 order also directed Zepka to move, by May 31, 2002, "nunc pro tunc for the Court's review and approval of the receiver's paying itself $55,131 as a management

fee and $38,192 for professional fees."[1]

Pursuant to the court's direction, Zepka filed a timely motion for approval of the fees already paid to its attorneys, as well as the fees paid to itself. Zepka explained how it had previously accounted on a periodic basis and why it felt that the compensation sought was more than reasonable, and recounted how it had submitted monthly operating reports to the judge who made the appointment. When that judge ceased handling the case, Zepka asserted, but was unable to demonstrate, that it continued to mail monthly reports to the court.

Zepka indicated that, although it has been in the property management business for over twenty years, the fees it sought to have approved "were below the normal and customary fees" charged for managing similar properties. Zepka also claimed that the fees of the attorneys it hired in 1993 were below normal rates. These attorneys charged for their work in the tenancy actions arising over the years at the rate of $100 per hour. This retainer agreement, according to Zepka, allowed the beneficiaries of Zepka's work to receive "legal services for nine years at a rate far below the rates normally charged by other firms for the same services." This contention was supported by the attorney's certification which indicated that the rate of $100 per hour constituted a significant reduction from their customary rates ranging between $175 to $275 per hour.

Zepka's motion was opposed by plaintiff Halpat Partnership Limited (Halpat), a mortgagee, who, as a result of its foreclosure action, obtained title to twelve of the sixteen units in question on June 27, 1991.[2] Halpat argued that Zepka was not entitled to be

---

[1] Actually, according to later submissions, $33,542.92 was the amount previously paid to Zepka's attorneys.

[2] At some point in 2001, four other limited partnerships became owners of these twelve units. However, because it had been the owner between 1991 and 2001, Halpat was the real party in interest to any controversy about the rents received and expenses incurred by Zepka during that time period.

reimbursed for attorneys' fees because the court had not approved Zepka's employment of the attorneys. Halpat also sought compensation for having incurred its own attorneys' fees in litigating the sufficiency of Zepka's accounting.

The Chancery judge[3] agreed with Halpat in both respects. Accordingly, Zepka's request for approval of its prior payment of $33,542.92 in counsel fees from the rents received was denied, and Halpat's request for $7,883.75 in counsel fees incurred during the litigation about the accounting was granted.

## II

In rejecting Zepka's request, the Chancery judge applied an "absolute rule" forbidding the rent receiver's compensation for the fees of attorneys whose employment was never approved by the court. We reject the adoption of this "absolute rule" to applications by rent receivers because (a) the court rules relied upon by the Chancery judge—*R.* 4:53–3 and *R.* 4:53–5—apply to statutory receivers, custodial receivers and other trustees for distressed business associations and not to rent receivers, and (b) the "absolute rule" which we announced in *In re Xaviers, Inc.,* 66 *N.J.Super.* 561, 169 *A.*2d 708 (App.Div.1961) (*Xaviers* ), for application to assignees for the benefit of creditors, is similarly inapplicable.

We preface our review of these authorities by recognizing the differences between "equity receiverships," imposed for the safeguarding or liquidation of corporations and partnerships, and rent receivers, imposed for the protection of a mortgagee. The Supreme Court of the United States, through the words of Justice Cardozo, described the principal differences:

---

[3] For reasons not disclosed in the record on appeal, the Chancery judge heard Zepka's motion. While we have been provided with little information about the prior proceedings, these law and chancery cases were consolidated from the outset. The Chancery judge appears to be at least the third judge to have presided over the matter since its inception.

Neither the members of the legal profession nor the legislators were in danger of confusing decrees directed to [the dissolution and winding down, or rehabilitation of a corporation] with the sequestration of rents in an action of foreclosure.... A receivership in a foreclosure suit is limited and special. The rents and profits are impounded for the benefit of a particular mortgagee, to be applied upon the debt in the event of a deficiency. The corporation retains its other property, if it has any, unaffected in its power of disposition by the decree of sequestration. The creditors retain their remedies except against the income subjected to the lien. There is neither winding up of the business nor attempt to reorganize it and set it going anew.

[*Duparquet Huot & Moneuse Co. v. Evans*, 297 *U.S.* 216, 220–21, 56 *S.Ct.* 412, 414–15, 80 *L. Ed.* 591 (1936) ].

 Besides these obvious distinctions as to the scope and nature of the authority possessed by custodial and statutory receivers, on one hand, and rent receivers, on the other, there are also differences in the basis for such an appointment. The authority to appoint a rent receiver is purely contractual, normally arising from the provisions of a mortgage or other loan documents; its purpose is to protect the mortgagee's interests by imposing a court-supervised, disinterested person to collect the rents and pay expenses pending the ultimate disposition of the mortgaged premises. *See Fidelity Union Trust Co. v. Pasternack*, 123 *N.J. Eq.* 181, 183–84, 196 *A.* 469 (E. & A.1938). Custodial receivers and statutory receivers for business associations have different underpinnings, the former being a product of the court's inherent equity jurisdiction, *Ravin, Sarasohn, Cook v. Lowenstein Sandler*, 365 *N.J.Super.* 241, 249, 839 *A.*2d 52 (App. Div.2003), and the latter being a purely statutory creature, *Booream v. Washington Cas. Ins. Co.*, 110 *N.J. Eq.* 164, 166, 159 *A.* 519 (Ch.1932). There are also variations in their purposes and lifespans. Custodial receivers are designed to maintain the status quo for a definite period of time, usually only during the pendency of the litigation. *State v. E. Shores, Inc.*, 131 *N.J.Super.* 300, 309–10, 329 *A.*2d 585 (Ch.Div.1974). The reason for the appointment of a statutory receiver is to liquidate the corporation; such an appointment may survive the termination of the lawsuit, and continues for whatever time it may take to wind down the affairs of the corporation.

While the rent receiver is different in that the right to such relief emanates from contractual underpinnings, it is also true that such an appointment may turn on equitable considerations; that is, a court of equity may withhold the contractual right to a rent receiver in appropriate circumstances, *Barclays Bank, P.L.C. v. Davidson Ave. Assoc.*, 274 *N.J.Super.* 519, 523–24, 644 *A.*2d 685 (App.Div.1994), just as it may withhold the appointment of a liquidating receiver even when the statutory requirements of *N.J.S.A.* 14A:14–2 have been met, *Moore v. Splitdorf Elec. Co.*, 114 *N.J. Eq.* 358, 360, 168 *A.* 741 (E. & A.1933). However, a contractual covenant calling for the appointment of a rent receiver is normally accorded great weight, *Barclays Bank, supra,* 274 *N.J.Super.* at 523–24, 644 *A.*2d 685, while we doubt a similar contractual provision would be given such weight in determining whether a statutory or custodial receiver should be appointed.

These significant differences between the basis, the purpose, and the duration of a statutory or custodial receiver, on the one hand, and a rent receiver, on the other, do not compel, but are suggestive, of the inapplicability of the authorities relied upon by the Chancery judge which govern only the former.

While *R.* 4:53–3, upon which the Chancery judge relied, does not expressly define its own scope, it is understood that this rule and the other provisions contained within *R.* 4:53 apply "only to custodial and liquidation receivers." Pressler, *Current N.J. Court Rules,* comment on *R.* 4:53–1 (2004). This is demonstrated by a review of the literal terms of these provisions. Indeed, a consideration of *R.* 4:53 as a harmonious collection of working parts, gathering meaning and purpose from each neighboring provision, *see State v. Malik,* 365 *N.J.Super.* 267, 276, 839 *A.*2d 67 (App.Div. 2003), mandates our determination that these rules were intended to apply only to custodial or statutory receivers for troubled business entities, and not rent receivers.

*R.* 4:53–1 expressly refers to the circumstances which permit a court, by way of its "general equity power," to appoint a "custodial receiver" or a "statutory receiver" for a corporation or partner-

ship. *R.* 4:53–2 directs that venue in an action "for the appointment *of a receiver of a corporation or partnership* shall be laid in the county where the principal place of business of the corporation or partnership is located" (emphasis added). *R.* 4:53–6 explains when, how and to whom "[r]eceivers appointed or directed *to wind up the affairs of a partnership or pay its debts, and trustees in liquidation of trust estates* " must give notice of their appointment (emphasis added). *R.* 4:53–7 sets forth the time frames and specific requirements for inventories and accountings of receivers and trustees in liquidation. *R.* 4:53–8 refers to "accounting proceedings in connection with the liquidation of a financial institution." And *R.* 4:53–9 places parameters on the destruction of records of "the corporation or partnership" over which the receiver or trustee has acted.

Only *R.* 4:53–5 gives no particular indication, on its face, that the "receiver" referred to therein is not so limited but, like *R.* 4:53–3, this provision also does not give an indication that it was intended to have such a broad application as to include rent receivers.

Other aspects of *R.* 4:53–3 suggest that it was not intended to apply to any receivers other than custodial and statutory receivers for corporations or partnerships. For example, this rule requires that notice of the receiver's motion for the employment of an attorney or accountant be given to "all creditors or such of them as the court shall direct," as well as the Internal Revenue Service, the United States Attorney for the District of New Jersey, and the Attorney General for the State of New Jersey. We would expect that there would be very few instances in which these governmental officials or agencies would be interested in the appointment or actions of a rent receiver of property in foreclosure. In addition, as observed, the rule speaks of notice to creditors, but not to debtors or obligors, who, other than the mortgagee, would have an interest in the actions of a rent receiver. Indeed, if this rule applies to rent receivers, it does not identify whose creditors should be given

notice, i.e., the creditors of the payors of rent, the creditors of the mortgagee, or the creditors of the mortgagor.

Also, *R.* 4:53-3 indicates the purpose of court approval of the employment of counsel is, in part, so the court may be satisfied that the attorney does not have an interest in the litigation "as would disqualify the attorney ... from properly serving the receiver as a fiduciary *for all the stockholders and unsecured creditors of the estate*" (emphasis added). The emphasized phrase clearly establishes that the receivers spoken about in this rule are custodial and statutory receivers, not rent receivers. The view that *R.* 4:53 does not have a broader application is further supported by *R.* 4:54, which directs that the practice governing assignees for the benefit of creditors "shall conform as nearly as practicable to the procedure *relating to insolvent corporations,*" an obvious reference to *R.* 4:53 (emphasis added). If *R.* 4:53 was intended to broadly encompass all conceivable types of receivers, it would have been understood to apply to such assignees without a need for the enactment of *R.* 4:54. The presence of *R.* 4:54 demonstrates the limited scope of *R.* 4:53.

While we have, thus, determined that the rules in question do not apply to rent receivers, we also observe that these rules contain no provision which expressly prohibits compensation for services rendered prior to the court's approval of the employment of counsel. In mistakingly locating such an obligation in the rules, the Chancery judge relied upon *R.* 4:53-3 and *R.* 4:53-5. The former states, in pertinent part:

> *A receiver may employ an attorney or accountant only if the court determines that such employment is necessary* to the proper conservation and administration of the estate.... The court shall authorize such employment if satisfied of the necessity of the employment and that the attorney or accountant is not interested in the litigation or in any of the parties thereto in such a way as would disqualify the attorney or accountant from properly serving the receiver as a fiduciary for all the stockholders and unsecured creditors of the estate.

> [Emphasis added.]

While the first sentence of *R.* 4:53-3, emphasized above, suggests this "absolute rule," *R.* 4:53-3 does not expressly bar compensa-

tion in the absence of the court's imprimatur on the employment of counsel.

R. 4:53-5 states: "Unless a receiver applies for, and until the receiver obtains leave to employ, an attorney, the plaintiff's attorney may proceed with the conduct of the cause, but shall not be allowed by the court any compensation for services rendered after ·the appointment of the receiver unless thereafter appointed the receiver's attorney by the court." This rule applies to circumstances not presented here and also does not create the "absolute rule" applied by the Chancery judge.

Notwithstanding, the Chancery judge correctly concluded that *Xaviers, supra,* 66 *N.J.Super.* at 567–69, 169 *A.*2d 708 does impress this "absolute rule" on *R.* 4:53-3 and *R.* 4:53-5. And, while *Xaviers* only considered an application for similar compensation by an assignee for the benefit of creditors, its holding was also intended to apply to all the types of receivers and trustees encompassed by *R.* 4:53.

*Xaviers* provides the historical basis for the adoption of the rules governing a receiver's employment of counsel and the rationale behind the "absolute rule" relied upon by the Chancery judge:

> The chancellors, cognizant of the difficulties entailed in administering an insolvent estate, generally preferred the appointment of an attorney as receiver, not only better to meet these difficulties but also to avoid the often unnecessary double expense to the estate resulting from the employment of separate counsel by a lay receiver. It was recognized, however, that the attorney-receiver might be involved in legal controversy above and beyond the complex executive and administrative duties of his appointed position. His recourse was application to the court, by verified petition, seeking an order appointed, or empowering him to appoint, separate counsel; *without such order, the appointment could not be charged against the estate.*

[66 *N.J.Super.* at 570–71, 169 *A.*2d 708 (citations omitted).]

Because of these concerns about potential conflicts and the infliction upon the insolvent corporation, and its creditors, of "unnecessary double expense" when an attorney-receiver employs an attorney, rules were adopted for application in the former Court of

Chancery which survive, in almost verbatim form, as *R.* 4:53–3 and *R.* 4:53–5. We explained the genealogy of these rules in *Xaviers:*

> The accepted practice was incorporated into Chancery Rule 106, an almost verbatim forerunner of the present *R.R.* 4:68–4.[4] The mandatory nature of the requirement of prior appointment as a prerequisite to compensation as counsel is also reflected in *R.R.* 4:68–6,[5] slightly altered successor to Chancery Rule 108, and providing that:
>
>> Unless a receiver applies for, and, until he obtains leave to employ an attorney, the plaintiff's attorney may proceed with the conduct of the cause; but except where the latter is appointed by the court attorney or counsel for the receiver, he shall not be allowed by the court any compensation for his services.
>
> *The rule is explicit in its statement that only attorneys appointed by the court may be compensated from the receivership.*
>
> [66 *N.J.Super.* at 570–71, 169 *A.2d* 708 (emphasis added; citations omitted; footnotes added).]

After providing this historical background, *Xaviers* held that the purposes of the rules we now know as *R.* 4:53–3 and 4:53–5 could only be fulfilled by a prohibition on "an after-the-fact determination of whether the attorney's services were necessary and whether his employment met the criteria" of the rules. 66 *N.J.Super.* at 571–72, 169 *A.2d* 708. It is this prohibition which the Chancery judge principally relied upon in rejecting Zepka's application for reimbursement of the counsel fees it expended in prosecuting tenancy actions during its eleven-year tenure as rent receiver.[6]

While we have no cause in this appeal to re-examine *Xaviers* insofar as it applies to receivers for troubled business associations and assignees for the benefit of creditors, we are mindful that *Xaviers* is the product of an era where "the abuses of the pre–1948 chancery practice of granting excessive fees to favored members of the bar" were still freshly remembered. *See Satellite Gateway Comm., Inc. v. Musi Dining Car Co.,* 110 *N.J.* 280, 285,

---

[4] *R.* 4:53–3 is essentially identical to *R.R.* 4:68–4.

[5] *R.* 4:53–5 is essentially identical to *R.R.* 4:68–6.

[6] The trial judge also relied upon *In re Trylon Radio Lab., Inc.,* 76 *N.J.Super* 264, 184 *A.2d* 167 (Co.Ct.1962), where *Xaviers* was followed in the same context. *Trylon* is inapposite for the same reasons.

540 *A*.2d 1267 (1988). Our court rules are the product of a repudiation of "the entire practice of judicial allowance of counsel fees," and the imposition of a network of "rigid restrictions" intended to eliminate "the serious abuses and adverse public effects which had accompanied the practice in the Court of Chancery and elsewhere." *State v. Otis Elevator Co.*, 12 *N.J.* 1, 27, 95 *A*.2d 715 (1953) (Jacobs, J., dissenting). Decided only slightly more than a decade later, *Xaviers* must be placed in and illuminated by that historical context. Because we have determined that rent receivers are not bound to the rules which were interpreted in *Xaviers*, we need not decide whether *Xaviers* should be cast off as an undesirable vestige of the past or whether there is a continued need for *Xaviers* "absolute rule" so many years after the cessation of the pre–1948 chancery practice. We conclude only that *Xaviers* and the rules it interpreted do not govern rent receivers, and we reject the invitation to expand its holding.

By concluding that *R.* 4:53 has no application to rent receivers, however, we do not mean to suggest that the court does not possess the authority to comprehensively govern the actions of a rent receiver it has appointed. Nor do we suggest that the general provisions contained in these rules are not a useful guide for reviewing the rent receiver's acts or omissions, the sufficiency of its accounting, or its applications for compensation. Our holding is limited to rejecting the application of an "absolute rule" which would prevent the approval of the attorneys' fees expended by a rent receiver in the absence of court approval of the attorneys' employment.

In the absence of such an "absolute rule," a trial judge may very well obtain guidance from *R.* 4:53. For example, *R.* 4:53–3 requires that the court be "satisfied of the necessity of the employment and that the attorney ... is not interested in the litigation or in any of the parties thereto in such a way as would disqualify the attorney ... from properly serving the receiver." If the facts and circumstances indicate that the employment of an attorney was necessary and the attorney employed would not have

an interest or a conflict in his representation of the receiver, then there would be no reason why the court could not approve the retention of the attorney nunc pro tunc. By the same token, if the compensation sought by the rent receiver was unduly or unnecessarily increased by the retention of counsel, or if the attorney was in some way "interested in the litigation or in any of the parties thereto in such a way as would disqualify the attorney ... from properly serving" the rent receiver or other interested persons or parties, then there may be justification for withholding approval, in whole or in part, of such compensation from the funds collected.

While we would commend consideration of the general procedures contained in *R.* 4:53, to the extent suitable, to rent receivers in the conduct of their affairs and to the trial courts in examining the rent receiver's performance, accounting and requests for compensation, we find no salutary purpose in the adoption of a rule, such as that described in *Xaviers,* which would preclude the approval of compensation because formal application for the retention of an attorney did not precede that attorney's services. Certainly, the rent receiver would be better served by seeking approval in advance. Indeed, in the absence of such approval and upon the later discovery that the attorney would not have been appointed because of a conflict of interest, or because the appointment would not serve any valid purpose, the court may very well find it inequitable to allow compensation, and the rent receiver, as a result, may forfeit reimbursement or be required to disgorge any payments previously made to such attorneys. But, in the absence of such circumstances, no purpose is served in a blanket refusal to consider the reasonableness or necessity of the fees generated prior to court approval of the attorney's employment.

For these reasons, we reject the Chancery judge's adoption of an "absolute rule" prohibiting the reimbursement of the attorneys' fees paid by the rent receiver. We remand in order to permit the judge to ascertain whether or to what extent the attorneys' fees incurred were reasonable or necessary in the fulfillment of the rent receiver's obligations.

[At the direction of the court, the discussion of the other issues in the appeal has been omitted from the published version of the opinion.]

For these reasons, we (1) vacate those provisions in the orders of January 28, 2003 and April 9, 2003 which denied Zepka's motion for the approval of the attorneys' fees incurred during the rent receivership and remand for further proceedings in conformity with this opinion, (2) reverse that part of the January 28, 2003 order which awarded Halpat legal fees of $7,883.75, and (3) affirm those parts of the January 28, 2003 and April 9, 2003 orders which were the subject of Halpat's cross-appeal.