46 A.3d 632

STURDY SAVINGS BANK, PLAINTIFF, v. GARY W. ROBERTS; WANDA S. ROBERTS, HIS WIFE; ATLANTIC ELECTRIC; COUNTY OF CAPE MAY; STATE OF NEW JERSEY; CACV OF NEW JERSEY, LLC, AND C & R OF NORTHFIELD, ASSIGNEE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided February 21, 2012—Approved for Publication June 25, 2012.

*Laura Scurko* for plaintiff (*Stern, Lavinthal, Frankenberg & Norgaard,* attorneys).

WILLIAM C. TODD, P.J.Ch.

This is an action to foreclose a mortgage that encumbers a single family home located in Cape May County. The property was purchased by defendants Gary W. Roberts and Wanda S. Roberts in 2003, using a loan secured by the mortgage in question. The Robertses occupied the property after it was first acquired. They vacated the property several years ago, before the complaint for foreclosure was filed. Plaintiff, the foreclosing mortgagee, has asked this court to determine that the mortgage in question "is not a residential mortgage," anticipating that such a determination would permit it to proceed with the foreclosure without being required to comply with certain provisions of the Fair Foreclosure Act, *N.J.S.A.* 2A:50–53 to 2A:50–68, and other provisions of our court rules. *See R.* 4:64–1(a)(2); and *R.* 4:64–2(d). For the reasons noted below, the application dealing with the Fair Fore-

closure Act has been granted, and the application dealing with the court rules has been denied.

Plaintiff's attorneys have not been able to locate the Robertses. Some of the materials filed suggest they moved out of state some time ago, without providing meaningful information indicating how they could be located. The matter has been proceeding through the Office of Foreclosure as an uncontested matter, based on service by publication. The pending request has been presented in the vicinage, by motion. While copies of the motion have been mailed to defendants at their last known address, it is probable they do not have actual notice of the foreclosure itself or of the pending motion. *See R.* 4:4–5 (permitting service of process by publication after appropriate inquiry); *R.* 1:5–2 (permitting service of motions on parties by mail, addressed to the party's last known address). In that context, the motion is unopposed.

The circumstances leading to this application are fairly clear. The property at issue is located at 2127 Route 47 in Eldora, New Jersey. As already noted, defendants purchased the property in 2003, with the proceeds of a loan provided by plaintiff, in the amount of $72,000. The Uniform Residential Loan Application completed by defendants indicated the property would be used as their primary residence. The property was presumably used in that fashion after the closing, which occurred in September 2003. Defendants executed a note and a mortgage in favor of plaintiff, and made the monthly payments required under the note for several years. Defendants defaulted in September 2009. Plaintiff filed the complaint in this matter April 29, 2010, apparently proceeding on the assumption that its ability to proceed was subject to the procedural and substantive protections of the Fair Foreclosure Act. The Case Information Statement filed with the complaint described this matter as a "Residential Mortgage Foreclosure." The complaint itself recited that plaintiff had complied with the "notice requirement" of Section 4 of the Fair Foreclosure Act at least thirty days prior to the filing of the complaint. *See N.J.S.A.* 2A:50–56.

By the time the complaint was filed, it was apparent that defendants were no longer residing at the property. Plaintiff arranged for the property to be appraised in February 2010. The appraisal, executed February 15, 2010, recited that the property was vacant, and that the appraiser had been unable to obtain access to the interior of the property. A process server subsequently attempted to serve the summons and complaint on defendants at the property May 3, 2010. He also reported that the property was vacant, indicating that the realtor who was somehow involved with the property had confirmed that defendants were then living out of state. That realtor would not provide an address or phone number for defendants. Plaintiff's counsel then made a variety of inquiries, in an attempt to locate defendants for the purpose of arranging for the service of process, without success. An appropriate certification of inquiry was filed in December 2010, and plaintiff proceeded with service by publication in June 2010. Defendants' default was entered in November 2010. Additional notices were then mailed to defendants at the property at issue in April 2011, providing notice of defendants' right to cure the continuing default pursuant to Section 6 of the Fair Foreclosure Act. *See N.J.S.A.* 2A:50-58. Those notices were returned, marked "Unable to Forward." It is apparent that defendants are not residing at the property in question, and have not resided there for a substantial amount of time.

It is in that context that plaintiff has filed the application at issue here. In essence, plaintiff has asked this court to determine that its request for foreclosure is not subject to the procedural and substantive protections of either the Fair Foreclosure Act or the provisions of *Rule* 4:64-1(a)(2) and *Rule* 4:64-2(d). That determination presumably would permit plaintiff to proceed with an application for the entry of final judgment through the Office of Foreclosure, without being required to establish that it had complied with the provisions of either the statute or the rules just cited. Recent developments in our case law have presented some challenges for lenders and servicers who are required to comply with the provisions of the Fair Foreclosure Act. It is likely this

application is, at least in part, a response to some of those challenges. *See Bank of N.Y. v. Laks,* 422 *N.J.Super.* 201, 27 *A.*3d 1222 (App.Div.2011) and *US Bank N.A. v. Guillaume,* 208 *N.J.* 380, 30 *A.*3d 317 (2011) granting petition for certification.

In pursuing this motion, plaintiff cited an unpublished opinion issued by the Appellate Division in June 2011. *Aurora Loan Services, LLC v. Einhorn,* No. A-5586-09, 2011 *WL* 2378179 (App. Div., June 9, 2011). That was a contested matter, both in the trial court and in the Appellate Division. The defendant property owners had questioned plaintiff's right to proceed based on the provisions of the Fair Foreclosure Act, while acknowledging that the property was not their home. *Id.* at 4-5. The Appellate Division concluded that the Fair Foreclosure Act did not apply to that action since the defendants had ceased residing in the property before the events of default leading to the foreclosure. *Id.* at 7-8. On that basis, the Appellate Division affirmed the trial court's action denying defendants' application to vacate the judgment of foreclosure, thereby permitting the matter to proceed. *Id.* at 7 and 13. In essence, plaintiff has asked this court to adopt the Appellate Division's analysis in that matter, and to extend that analysis to the interpretation of the provisions of *Rule* 4:64-1(a)(2) and *Rule* 4:64-2(d). The opinion in *Einhorn* is clearly not precedential. It is cited here only as a part of the history of this action. *See* R. 1:36-3; *Univ. of Mass. v. Christodoulou,* 360 *N.J.Super.* 313, 318 n. 1, 823 *A.*2d 51 (App.Div.2003); *Gottlob v. Lopez,* 205 *N.J.Super.* 417, 421, 501 *A.*2d 176 (App.Div.1985) *certif. denied,* 104 *N.J.* 373, 517 *A.*2d 384 (1986).

The resolution of plaintiff's motion turns on the proper interpretation of provisions of the Fair Foreclosure Act and the court rules. More particularly, the matter turns on the interpretation of the terms "residential mortgage" and "residential mortgage foreclosure," which appear, respectively, in the statute and the rules. In the abstract, those terms are susceptible to different interpretations. Those terms could refer to any mortgages or foreclosure proceedings involving properties which may be used for residential

purposes, even if the properties are not actually being used in that manner. Alternatively, those terms could refer to mortgages or foreclosure proceedings involving residential properties, whether or not the individual or individuals who occupy the property are also obligated on the debt secured by the mortgage. It is plaintiff's position that the terms at issue are only intended to refer to mortgages that encumber properties used as the residence of the mortgagor as of the date the statute or rules would be applied. From plaintiff's perspective, the term would not apply to a mortgage that encumbers a residential property which was purchased as an investment, and not for the use of the owner. Similarly, the term would not apply to a mortgage that encumbers a home which had been used as the mortgagee's residence if the mortgagee subsequently vacates the property and no longer intends to maintain it as his or her residence. The resolution of this dispute turns on whether either the statute or the court rules in question were intended to provide specific protections in those types of circumstances. In that context, it is appropriate to review the provisions of the Fair Foreclosure Act and the court rules at issue.

## THE PROVISIONS OF THE FAIR FORECLOSURE ACT

The Fair Foreclosure Act was enacted in 1995 in an attempt to provide protection to homeowners facing foreclosure. *N.J.S.A.* 2A:50–54. The statute provides a variety of procedural and substantive protections for homeowners. Most importantly, the statute provides that the owners of properties subject to the statute are permitted to cure defaults in the payments required under the mortgage at various times, thereby avoiding foreclosure.

By its own terms, the Fair Foreclosure Act generally applies to "residential mortgages." Section 2A:50–55 defines a residential mortgage in the following terms:

A mortgage, security interest or the like, in which the security is a residential property such as a house, real property or condominium, *which is occupied, or is to be occupied, by the debtor, who is a natural person, or a member of the debtor's immediate family, as that person's residence.* This act shall apply to all residen-

tial mortgages wherever made, which have as their security such a residence in the State of New Jersey, provided that the real property which is the subject of the mortgage shall not have more than four dwelling units, one of which shall be, or is planned to be, occupied by the debtor or a member of the debtor's immediate family as the debtor's or member's residence *at the time the loan is originated.* [*N.J.S.A.* 2A:50–55 (emphasis added).]

Plaintiff's application focuses on the provisions of the Act that require certain notices to be provided to residential mortgage debtors. Those provisions appear in *N.J.S.A.* 2A:50–56 and *N.J.S.A.* 2A:50–58. *N.J.S.A.* 2A:50–56 requires the lender to send notice of its intention to foreclose prior to the institution of the suit. That section states:

Upon failure to perform any obligation of a residential mortgage by the residential mortgage debtor and before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation and commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage, the residential mortgage lender shall give the residential mortgage debtor notice of such intention at least 30 days in advance of such action as provided in this section.

[*N.J.S.A.* 2A:50–56(a).]

The remaining provisions of *N.J.S.A.* 2A:50–56 address just what must be included in the notice and the manner by which the notice must be served.

*N.J.S.A.* 2A:50–58(a)(1) requires an additional notice to be served prior to the filing of a request for the entry of judgment, in the following language:

If a plaintiff's action to foreclose a residential mortgage is uncontested . . . a lender shall apply for entry of final judgment and provide the debtor with a notice, mailed at least 14 calendar days prior to the submission of proper proofs for entry of a foreclosure judgment, providing the debtor with the name and address of the lender and the telephone number of a representative of the lender whom the debtor may contact to obtain the amount required to cure the default, and advising that, absent a response from the debtor pursuant to paragraph (2) of this subsection a., proper proofs will be submitted for entry of final judgment in the foreclosure action and that upon entry of final judgment, the debtor shall lose the right, provided pursuant to section 5 of this act, to cure the default. The lender shall attach a copy of the required 14–day notice to the application for final judgment . . .

[*N.J.S.A.* 2A:50–58(a)(1).]

Under the statute, the debtor also has a right to submit a certified statement to the lender that there is a reasonable likelihood that

the debtor will be able to cure the defaulted loan within forty-five days. If such a statement is received, the lender must wait forty-six days to submit the proofs for entry of final judgment. *See* *N.J.S.A.* 2A:50-58(a)(2) and (3).

The sections of the Act quoted above deal with the procedural issues of notice. There are other substantive protections provided for residential mortgage holders including a right to cure on specific terms before the initiation of the lawsuit and again before the entry of final judgment. *N.J.S.A.* 2A:50-56 to -58. A cure is effected by the property owner bringing current the payments that are in default. *N.J.S.A.* 2A:50-57. This remedy is different depending on the time the cure is offered. If the cure is effected prior to the suit, the debtor has no obligation to pay the plaintiff's anticipated attorneys fees and costs. *N.J.S.A.* 2A:50-56(c)(5). After the filing of the suit, the debtor is still allowed to cure, but is required to pay the plaintiff's attorneys fees and costs. *N.J.S.A.* 2A:50-56(c)(7). Notably, the right to cure ends when judgment is entered. *N.J.S.A.* 2A:50-57. Obviously, the right to cure is a substantial protection for debtors.

## THE COURT RULES

As just noted, several provisions of the Fair Foreclosure Act refer to the term "residential mortgage," which is specifically defined in the statute. The provisions of the court rules at issue use a different term—"residential mortgage foreclosure." That term is also susceptible to differing interpretations. It is not specifically defined in the rules.

Under the rules in question, plaintiff's attorney is required to attach a certificate of diligent inquiry the complaint in any residential foreclosure. In addition, plaintiff's attorney is required to attach an affidavit of diligent inquiry to the subsequent motion to enter judgment which would normally be filed after the defendant's default had been entered.

*Rule* 4:64-1(a)(2) requires a certificate of diligent inquiry to be attached to the complaint. That Rule reads as follows:

(a) Title Search; Certifications.

. . . .

(2) In all residential foreclosure actions, plaintiff's attorney shall annex to the complaint a certification of diligent inquiry:

(A) confirming that the attorney has communicated with an employee or employees of the plaintiff or of the plaintiff's mortgage loan servicer (i) who personally reviewed the complaint and confirmed the accuracy of its content, as mandated by paragraphs (b)(1) through (b)(10) and (b)(12) through (b)(13) of this rule, based on business records kept in the regular course of business by the plaintiff or the plaintiff's mortgage loan servicer, and (ii) who, if employed by the plaintiff's mortgage loan servicer, (a) identified the relationship between the mortgage loan servicer and the plaintiff, and (b) confirmed the authority of the mortgage loan servicer to act on behalf of the plaintiff; and

(B) stating the date and mode of communication employed and the name(s), title(s) and responsibilities in those titles of the plaintiff's or plaintiff's mortgage loan servicer's employee(s) with whom the attorney communicated pursuant to subparagraph (a)(2)(A) of this rule.

[*R.* 4:64–1(a)(2).]

In addition, *Rule* 4:64–2(d), requires plaintiff's counsel to attach an affidavit of diligent inquiry to every motion for final judgment. That Rule reads as follows:

(d) Affidavit. Plaintiff's counsel shall annex to every motion to enter judgment in a residential mortgage foreclosure action an affidavit of diligent inquiry stating: (1) that the attorney has communicated with an employee or employees of the plaintiff or of the plaintiff's mortgage loan servicer who (A) personally reviewed the affidavit of amount due and the original or true copy of the note, mortgage and recorded assignments, if any, being submitted and (B) confirmed their accuracy; (2) the date and mode of communication employed; (3) the name(s), title(s) and responsibilities in those titles of the plaintiff's employee(s) or the employee(s) of the plaintiff's mortgage loan servicer with whom the attorney communicated pursuant to this rule; and (4) that the aforesaid documents comport with the requirements of Rule 1:4–8(a).

[*R.* 4:64–2(d).]

Complaints and motions for final judgment in residential foreclosures that do not include the required certifications of diligent inquiry will not be filed. The incomplete applications are to be marked received, but not filed, and are returned to plaintiff's counsel. The matter does not proceed until the deficiency is remedied. *See R.* 1: 5–6(c)(1)(e).

## THE QUESTIONS PRESENTED

Defendants acquired the property at issue for use as their residence, with the proceeds of the mortgage being foreclosed. Defendants are the debtors on the note and mortgage. They resided at the property for some time after it was acquired. In that context, it is clear the mortgage was a "residential mortgage" under any reasonable interpretation of that term, for as long as defendants continued to maintain it as their residence. The issue presented is whether the mortgage lost that special status when defendants apparently determined they would no longer maintain the property as their residence, under the statute, the court rules, or both.

There are two distinct questions presented, involving the interpretation of the provisions of the Fair Foreclosure Act on the one hand, and the interpretation of the provisions of *Rule* 4:64–1(a)(2) and *Rule* 4:64–2(d) on the other. The statute and the rules use somewhat different terms—"residential mortgage," and "residential mortgage foreclosure," respectively. The interpretation of the Fair Foreclosure Act is a matter of legislative intent. The interpretation of the rules presumably turns on the intentions of the Supreme Court in enacting the rules or the rule revisions in question. Somewhat different inquiries are appropriate. In each case, however, the terms at issue are susceptible to differing interpretations. The issues presented as to the statute and the rules will be addressed separately below.

## THE INTERPRETATION OF THE
## FAIR FORECLOSURE ACT

Any inquiry as to the meaning of the term "residential mortgage," as that term is used in the Fair Foreclosure Act, should begin with the provisions of the statute that define that term. *See* *N.J.S.A.* 2A:50–55. The statute, however, is potentially ambiguous.

The definitional section of the statute contains two sentences. The first sentence, standing alone, is fairly clear. Essentially it provides that a residential mortgage is a mortgage where the property serving as a security interest is either currently occupied or is going to be occupied in the future by the debtor or member of the debtor's immediate family. That section of the statute seems to require current occupancy, or a current intent to occupy the property, at the time the statute would be applied. *N.J.S.A.* 2A:50–55. The second sentence of the statute, however, is more restrictive. As phrased, it provides that the Act applies only to a discrete group of "residential mortgages." More specifically, that sentence provides that there can be no more than four units in the property. It also requires that one of the units is or is planned to be occupied by the debtor or a member of the debtor's immediate family "*at the time the loan originated.*" *N.J.S.A.* 2A:50–55. That portion of the statute is ambiguous. Is the reference to occupancy "at the time the loan originated" simply an additional restriction, requiring occupancy both at the time of origination and at the current time for the statute to be effective? Alternatively, is there reason to suggest that occupancy at the time the loan originated, alone, is all that is required for the Fair Foreclosure Act to apply, irrespective of whether that occupancy continues through the time the protections available under the statute might be invoked? That is the alternative posed by the facts presented here.

It seems clear that the Act only applies in situations where there was actual occupancy or an intent to occupy, by the debtor or the debtor's family, at the time the loan was placed. Individuals who acquire residential property for investment purposes, with no intent to use that property as their own residence, presumably would not be protected by the Act even if they subsequently elect to occupy the property. The issue presented here, however, is different. Does a mortgage that is subject to the protections of the Act, based on occupancy at the time of origination, lose those protections if the debtor or his family subsequently elect not to

occupy the property, with no intention to return? The statute does not address the issue in specific terms.

There are a number of reasons why one might interpret the statute expansively, to extend its provisions to the circumstances presented here, where the debtor or his family elect not to occupy the property sometime after the loan was originated. The Fair Foreclosure Act is a remedial statute. For that reason it would generally be appropriate to interpret the statute liberally. *See Serv. Armament Co. v. Hyland,* 70 *N.J.* 550, 558–59, 362 *A*.2d 13 (1976). In addition, an interpretation of the statute which permits a loss of protected status based on the debtor's election to abandon occupancy could give rise to any number of potential disputes, involving lenders, debtors, and the courts. Does the mortgage lose its protected status if the debtor vacates, but with the intention to return? At what time is the determination as to protected status to be made? Should that occur when the lender elects to serve a Notice of Intention to Foreclose, at the time the complaint is filed, or at the time of the application for the entry of judgment? Is the issue subject to review throughout the foreclosure process? Does a mortgage regain its protected status when a debtor elected to vacate with no intention to return, but subsequently resumes occupancy? How does one determine the debtor's intentions? How does the court address the issue, particularly in uncontested foreclosures?

■ This court is satisfied, however, that the interpretation of the statute suggested by plaintiff is appropriate. That interpretation is consistent with a literal reading of the first sentence of the definition contained within the statute, defining a residential mortgage as a mortgage on a property that "is occupied or is to be occupied" by the debtor or his family. *N.J.S.A.* 2A:50–55. In essence, the statute defines the term "residential mortgage" in terms of current occupancy. Just as importantly, that interpretation is consistent with the general purpose of the Fair Foreclosure Act. The Legislature, in formulating the Act, found that "homeowners should be given every opportunity to pay their home

mortgages, and thus keep their homes; and that lenders will be benefitted when residential mortgage debtors cure their defaults and return defaulted residential mortgage loans to performing status." *N.J.S.A* 2A:50–54. The Act was enacted, at least in part, to give debtors multiple opportunities to correct a defaulted mortgage and retain possession of their home. It seems unlikely the Legislature was concerned with providing special protections to mortgages encumbering properties that are no longer occupied by the mortgagor. *See Couri v. Gardner*, 173 *N.J.* 328, 339, 801 A.2d 1134 (2002) (recognizing propriety of looking to overall purpose of statute in resolving issues as to its interpretation).

For those reasons, this court concludes that the protections available under the Fair Foreclosure Act do not apply to the circumstances presented here—where the debtor or the debtor's family did occupy or intended to occupy the property at the time the loan as originated, but then elected to vacate the property with no intention to return, as of the date the foreclosure complaint was filed. The order to be entered as a result of this opinion will confirm that plaintiff may proceed with its request for the entry of judgment through the Office of Foreclosure without establishing its compliance with the Fair Foreclosure Act.

## THE INTERPRETATION OF THE COURT RULES

Additional issues are presented as to the interpretation of the provisions of *Rule* 4:64–1(a)(2) and *Rule* 4:64–2(d). In each case, the rule in question requires specific filings in residential foreclosures. The first rule refers to "all residential foreclosure actions." The second rule refers to proceedings in "a residential mortgage foreclosure action." The term "residential mortgage" appears in both the Fair Foreclosure Act and the rules. The interpretation of the rules, however, requires additional analysis.

There are any number of reasons why the term "residential mortgage" might be interpreted differently in dealing with the rules as opposed to the statute. The statute was created by the Legislature. The rules were enacted by the Supreme Court.

Those entities may or may not have had the same understanding as to the use of the term at issue. Obviously, there is no definitional section in the rules, as there is in the statute. In addition, it is possible to distinguish the policy concerns giving rise to the Fair Foreclosure Act and the specific provisions of the rules at issue. One central component of the statute is the right to cure. The focus of the rules, on the other hand, is insuring the integrity of the foreclosure process. In that context, it is appropriate to review the circumstances leading to the rule revisions that refer to the term at issue. The process began in the fall of 2010. Emergent amendments to the rules were enacted in December 2010. Further amendments were enacted in June 2011.

The rule revisions at issue were intended as a response to concerns that had been raised as to the processing of foreclosures around the country. Those concerns arose in a variety of contexts, often in conjunction with litigation. The problems received a great deal of attention in the public media, and gave rise to a number of investigations both at the state and federal level.

In this state, those concerns were the focus of a formal report presented to our Supreme Court by Legal Services of New Jersey in November 2010. That report alleged there were serious deficiencies in the processing of foreclosures in New Jersey. There were accusations that the employees of mortgage lenders and mortgage servicers had executed massive amounts of documents and affidavits submitted in the foreclosure proceedings without any actual knowledge of the truth of their contents, a practice that came to be known as "robo-signing". It also was alleged that large numbers of documents were improperly notarized. Additional questions were raised in regards to the standing of those entities identified as plaintiffs in foreclosure proceedings. The Supreme Court and the Acting Director of the Administrative Office of the Courts reacted to those concerns in a variety of ways. *See Administrative Order 01–2010,* "Administrative Order Directing Submission of Information from Residential Mortgage Fore-

closure Plaintiffs Concerning their Document Execution Practices to a Special Master" (December 20, 2010).

A variety of actions were taken in December 2010. An order to show cause was issued by Judge Jacobson, requiring six lenders and servicers implicated in the allegedly improper foreclosure practices to show why the uncontested residential actions filed on their behalf should not be suspended. In a separate administrative action, twenty-four additional lenders and servicers, who had filed more than 200 residential foreclosure cases in the prior year, were required to submit proof that they did not use improper techniques in the foreclosure processing. Finally, the Supreme Court adopted emergent amendments to *Rule* 1:5-6, *Rule* 4:64-1, and *Rule* 4:64-2, requiring the filing of additional certifications in residential mortgage proceedings. In June 2011, after considering comments to the emergent rule amendments, the Supreme Court adopted further amendments to *Rule* 4:64-1 and *Rule* 4:64-2. The Supreme Court also issued an additional order requiring the filing of additional affidavits in residential foreclosure actions pending as of that time. That order required additional filings in cases where judgment had not yet been entered, and in cases where judgment had been entered but a sheriff's sale had not been conducted.

The proceedings initiated by the issuance of an order to show cause by Judge Jacobson have continued. Special Masters were appointed. Substantial submissions were required from the various lenders and servicers involved. Those submissions have been the subject of extensive review by the Special Masters and the court. The process of monitoring the handling of uncontested residential foreclosures continues today.

In this case, plaintiff has asked the court to determine that the references to "residential foreclosure actions" in *Rule* 4:64-1(a)(2) and *Rule* 4:64-2(d) should not extend to the property at issue here—a property which previously was occupied by the debtor on the mortgage, but which has now been abandoned. Those terms were incorporated in each of the rules in question through the

amendments adopted in December 2010, with additional amendments in June 2011. It is clear that all of the proceedings noted above—the issuance of the Administrative Order, the commencement of proceedings before Judge Jacobson, and the adoption of amendments to the rules—dealt with the handling of uncontested residential foreclosure cases. It is not so clear that the rule revisions at issue should be interpreted as restrictively as plaintiff suggests. As discussed above, one section of the Fair Foreclosure Act defines the term "residential mortgage" in fairly restrictive terms. The question presented here is whether that term, as used in the rules, should be interpreted in the same way.

Again, there are a number of reasons why one might interpret the rules more expansively than suggested by plaintiff. The term "residential mortgage," standing alone, is susceptible to any number of interpretations. Absent the restrictive definition contained in the statute, that term might refer to a mortgage that encumbers any property which may be used for residential purposes, irrespective of whether the property is now or has been occupied in the past, whether by the obligor on the mortgage or any other individual. The term might refer to properties containing any number of units, or even to properties with mixed commercial and residential properties. As with the statute, the rule appears to be remedial in nature. As with the statute, more restrictive definitions may give rise to a variety of disputes. If occupancy is required, when is the determination as to occupancy to be made? If the intent to occupy is required, how does one address that issue? Should the procedure for processing an uncontested foreclosure change if the owner of the property elects to vacate while the foreclosure in pending? Is the Office of Foreclosure required to assess whether the property is occupied, in determining whether the submissions contemplated by the rules are required? If so, what proofs, if any, should be presented to the Office of Foreclosure? Is it possible that the plaintiff would be obligated to file a certification of diligent inquiry when the complaint is filed, but would not be required to file an affidavit of diligent inquiry with

the motion for judgment, because the debtor had vacated the property in the interim?

There are other reasons why one might conclude the rules should be interpreted more restrictively. The Fair Foreclosure Act has a substantial impact on the processing of foreclosures in New Jersey. It has been in place, with its restrictive definition of "residential mortgage," since 1995. Applying the statutory definition to the rules might provide some measure of consistency in an area of the law already subject to substantial complexity. In any event, the concerns giving rise to the rule revisions were clearly concerns as to the rights of homeowners—individuals who own the property in question, and who are facing the loss of their home because of their inability to pay the debt secured by the mortgage. That same concern was evident in our Supreme Court's action in 2008, implementing New Jersey's Residential Mortgage Foreclosure Mediation Program, a program only available where the property is an owner-occupied one-to three-family residential property, where the property is the homeowners primary residence, and where the homeowner is the borrower on the mortgage being foreclosed. Notably, substantial protections are in place under our law for non-owner occupants of residential property. *See Chase Manhattan Bank v. Josephson,* 135 *N.J.* 209, 638 *A.*2d 1301 (1994) (holding that Anti–Eviction Act applies to foreclosing mortgagees, irrespective of whether tenancy was established before or after execution of mortgage).

■ This is a difficult issue, but one which is presumably subject to further rule amendments by the Supreme Court, if it deems that appropriate. Considering all the circumstances, this court has concluded the provisions of *Rule* 4:64–1(a)(2) and *Rule* 4:64–2(d), requiring the submission of certifications or affidavits of diligent inquiry in "residential foreclosure actions" should be interpreted expansively, as requiring the filing of such certifications and affidavits in any action to foreclose a mortgage that encumbers a property occupied by the debtor in question, whether or not that occupancy continued through the date the complaint

was filed. That interpretation is consistent with the terminology used in the rule revisions themselves. There is no clear indication that the rules were to be read more restrictively, by reference to the provisions of the Fair Foreclosure Act.

Plaintiff's request for permission to proceed without the filing of the certifications and affidavits required under the rules in question is denied.